# National Life & Accident Insurance Co. *v.* Lokey.

*Action on Insurance Policy.*

(Decided Jan. 13, 1910. Denied Feb. 26, 1910. 52 South. 45.)

1. *Pleading; Variance; Manner of Raising.*—Where the evidence does not support the complaint the question of variance cannot be raised by demurrer, but must be raised otherwise.

2. *Appeal and Error; Presentation Below; Limiting Evidence.*— Where the complaint declared upon an insurance policy, and the

evidence disclosed an accident policy the defendant should have requested a charge limiting the effect of the policy as evidence to a count in the complaint declaring upon an accident policy, and in failing to do so cannot complain of the court's failure to so limit it in effect.

3. *Same; Harmless Error; Admission of Evidence.*—Where a person subsequently testified that he signed a receipt, it was harmless error to have permitted a witness to testify previously that such person had signed it.

4. *Same; Presumption.*—It will not be presumed on appeal, in the absence of evidence in the record that an insurance company was informed in writing of the death of the insured, for the purpose of putting the trial court in error in permitting the question as to when the company was informed of the insured's death, on the ground that such question called for hearsay evidence and was not the best evidence of the fact sought to be elicited.

5. *Charge of Court; Directing Verdict; Separate Count.*—If a plaintiff is entitled to have the verdict directed for him upon either count of the complaint the court will not be put in error for giving the general affirmative charge for the plaintiff.

6. *Trial; Objections to Evidence; Waiver.*—By failing to object to the admission of evidence until after it has been offered and admitted, all objections thereto, except illegality, is waived.

7. *Insurance; Action; Nature of Policy.*—A policy insuring against death resulting directly from bodily injuries caused by external, violent and accidental means, independent of all other causes, although in a sense a life policy, is not the kind of policy contemplated in form 12, section 5382, Code 1907.

8. *Insurance; Accident; Construction.*—A provision in an accident policy exempting the company from liability for fatal injury from exposure to risk or known danger does not relieve the company of liability for injury from danger to which insured was involuntarily exposed.

9. *Same; General Construction.*—If doubtful, the insurance policy is always construed against the insurer and in favor of the insured.

10. *Same; Accident; Obvious Danger.*—Within the terms of an accident insurance policy relieving the company from liability for death resulting from exposure to an obvious danger or risk, the stepping from a moving train, irrespective of the speed thereof, is not as a matter of law an obvious danger.

11. *Same; Forfeiture; Violation of Ordinance.*—Where death occurs from insured's attempt to swing or alight from a car in motion, the death did not result while violating an ordinance prohibiting persons from catching hold of or swinging upon cars of a railroad company while such car was in motion.

12. *Same; Defenses; Demurrer.*—Where the policy provided that the existence of certain facts should reduce the amount recoverable under the policy, pleas setting up as a full defense to the action, such facts, were demurrable.

13. *Same; Contract of; Renewal; Modification.*—While a mere renewal of an insurance policy does not change the terms of the pol-

[National Life & Accident Insurance Co. v. Lokey.]

icy, but continues the rights of the parties under the original contract, the parties may change the terms of the contract upon a renewal.

144. *Same; Modifiaction; Agent's Authority.*—Where insurance agents have authority to issue receipts for the company for renewal premiums, and furnishes printed form to the agent to issue such receipt, such agent has authority to modify the contract in the renewal receipts.

15. *Same; Evidence.*—Although cumulative evidence of that fact after the introduction without objection of the policy, a receipt showing payment of the original premium was neither irrelevant incompetent nor immaterial.

16. *Same.*—In an action on an accident insurance policy, it is permissible to show that defendant's agent executed a renewal receipt, as tending to show a contract of insurance between the company and the person claimed to have been injured.

APPEAL from Birmingham City Court.

Heard before Hon. CHARLES A. SENN.

Action by Evelyn Lokey against the National Life & Accident Insurance Company, upon a policy of insurance. Judgment for plaintiff and defendant appeals. Affirmed.

STERLING A. WOOD, for appellant. The demurrers to the complaint should have been sustained.—*Insurance Co. v. Bledsoe,* 52 Ala. 538. The court erred in sustaining demurrer to the several pleas interposed by the defendant. The word, voluntary, is not in the contract. —*Sherlin v. A. M. A. Assn.,* 68 N. W. 866; *Smith v. Aetna L. I. Co.,* 88 N. Y. 368; see also 115 Ia. 217; 56 L. R. A. 271; 91 Am. St. Rep. 153; 4 Cooley on Insurance, 3216. The insured voluntarily exposed herself to danger within the policy.—*Overbeck v. Travellers Ins. Co.,* 68 S. W. 236. The insured was guilty of a known violation of law.—2 May on Insurance, section 530; 60 Am. St. Rep. 144. The following authorities may be looked to as to what a renewal is.—*C. F. I. Co. v. Morris,* 105 Ala. 506; *Peacock v. N. L. Life,* 1 Bos. 338; *Martin v. Home I. Co.,* 20 U. C. (C. P.) 447; *Hartford v.*

*Walsh,* 54 Ill. 164; *Abel v. Phoenix I. Co.,* 62 N. Y. Supp. 218; *Ryan v. Rand,* 26 N. H. 12; 51 Tex. 244; 34 La. Ann. 66. As to demurrers to the complaint see also the case of *U. S. H. & A. Co. v. Veitch,* 50 South. 95.

BOWMAN, HARSH & BEDDOW, for appellee. Demurrer is not the proper way to raise a variance.—*L. & N. v. Landers,* 135 Ala. 510; *Southern Ry. Co. v. Webb,* 143 Ala. 311. The court did not err in sustaining demurrers to the pleas.—*Sweet v. Bir. R. & E. Co.,* 136 Ala. 166; *Bir. R. L. & P. Co. v. Willis,* 38 South. 1016; *Equitable Acci. & I. Co. v. Osborn,* 90 Ala. 201. Counsel discuss and criticise authorities cited by appellant. Also discuss the evidence, but without further citation of authority.

SAYRE, J.—It seems entirely clear to us that there was not tenable objection to the first count of the complaint. It followed the form laid down in the Code as for an action on a policy of life insurance, and stated a cause of action.—*Insurance Company v. Bledsoe,* 52 Ala. 538. If the evidence developed a case arising on a policy of accident insurance, that raised a question, we hardly need to say, to be reached otherwise than by demurrer. Nor does counsel for appellant contend for anything different. The contention in the brief is that there was error in that action of the court by which it allowed the policy to be put in evidence, notwithstanding defendant's objection because it tended to establish a case at variance with that stated in count 1. The effort to state in the Code form an action on a policy of accident insurance proceeded, as we think, upon a misapprehension of the proper office of that form. A policy which insures against death resulting directly and independently of all other causes from bodily in-

juries effected through external, violent, and accidental means, though in a sense a policy of life insurance, is not the sort of policy contemplated in form 12 of section 5283 of the Code, nor does it evidence the character of contract men have in mind when they speak of life insurance. But the second count of the complaint states an action on a policy of accident insurance—how defectively we will not say, because its defects are not urged in brief of counsel—and under this count the policy offered was admissible in evidence. The court at the time of its introduction might have appropriately limited the effect of the policy as tending to sustain only the second count; but exactly this the court was not asked to do, and, whether so or not, it cannot be said that there was error in its refusal to do so, for the reason that the correct method of securing its right in this connection by a charge limiting the effect of the evidence remained open to the defendant. The same considerations are to be applied with the same result to that assignment of error in which the appellant affirms error of the lower court in overruling its motion to exclude the policy in so far as the first count was concerned.

Plea 12 set up a clause of the policy in which it was stipulated that in the event of fatal injury from exposure to obvious risk of injury or known danger the defendant company should not be liable, and alleges that the death of the insured "did result from external, violent, or accidental means, and was the proximate result of the exposure by the said Mrs. Julia Reese (the insured) of herself to the obvious risk of danger, in this: That she attempted to and did step or jump or alight from a moving car, and that her said death resulted proximately therefrom." In argument stress is laid upon the fact that the exposure to danger provided for in

the exception quoted is not described as voluntary, and thus the conclusion is reached by way of the exception that a merely negligent exposure of himself to danger by the insured will relieve the insurer of liability. There seems to have been some conflict of opinion as to whether contributory negligence constitutes a defense to an action on the policy where the contract is general, insuring against accident occurring by external violence without any exception of the character under consideration.—*Shelvin v. American Mut. Acc. Ass'n,* 94 Wis. 180, 68 N. W. 866, 36 L. R. A. 52. In that case it is stated that the great weight of authority favors the conclusion that an injury may be said to be accidental, though attributable to the negligence of the insured. That inquiry, however, is excluded from this case by the provision of the policy in hand. Here the exception prevents liability in the event of exposure to obvious risk or known danger, meaning, as we apprehend, that the danger must meet the insured so squarely in front that he cannot in reason be heard to deny knowledge of it, or that it was in fact known; implying in either case an exposure to a danger that the insured knows and is conscious of at the time. Every policy of insurance, if doubtful, is construed in favor of the insured. We think it cannot in reason be said that the exception in question was intended to relieve the insurer of responsibility in the event the insured is involuntarily exposed to danger and suffers injury thereby. That would be contrary to the entire tenor of the contract. It follows, it would seem, that the addition of the word "voluntary," as descriptive of the insured's exposure, would add nothing to the meaning of the exception. The language used implies as much. It has been held by other courts in a number of cases that mere negligence on the part of the insured does not constitute a voluntary

exposure, and that the negligence of the insured, to bring his acts within an exception of voluntary exposure to danger, must be accompanied with knowledge of the existence of danger, or knowledge that injury is likely to result from his acts.—4 Cooley's Briefs, 3216.

But let it be assumed that the exception here relieved defendant of liability on "exposure to obvious danger," and that "exposure to obvious danger" means something less than voluntary exposure to obvious danger. How does the case stand? In *Tuttle v. Travelers' Ins. Co.*, 134 Mass. 175, 45 Am. Rep. 316, the language of the exception was "exposure to obvious or unnecessary danger." The court applied the general principles of the law of negligence. So in *Smith v. Preferred Mut. Acc. Ass'n*, 104 Mich. 634, 62 N. W. 990; *Travelers' Ins. Co. v. Jones*, 80 Ga. 541, 7 S. E. 83, 12 Am. St. Rep. 270, and *Smith v. Aetna Ins. Co.*, 115 Iowa, 217, 88 N. W. 368, 56 L. R. A. 271, 91 Am. St. Rep. 153. In *Shevlin v. American Mut. Acc. Ass'n*, 94 Wis. 180, 68 N. W. 866, 36 L. R. A. 52, the exception was: "Any injury resulting in whole or in part from exposure to unnecessary danger." The court said: "It plainly includes all cases of exposure to unnecessary danger, in which such exposure is attributable to negligence on the part of the assured; that is, the exception was intended to hold the insured responsible for the exercise of ordinary care, and to except from the provisions of the policy all cases of injury occurring in whole or in part through a failure to exercise such care. Under such a provision no recovery can be had if the injury is caused by reason of exposure to unnecessary danger, within the general principles of the law of negligence. The meaning, then, of the plea, is that there is obvious risk or danger in stepping, or jumping, or alighting from a moving car, without reference to the speed at which

the car may be moving, and that in doing so the insured
was guilty of negligence. The averment is, not that the
car was moving at a rate of speed obviously dangerous,
but in effect that it was obviously dangerous to step
from a car moving at any speed whatever; for this, at
least, is obvious: That proof that the car was moving
at a snail's pace would sustain the plea, as well as
proof that it was moving at express speed. Exceptional
circumstances may attend an attempt to alight from a
moving car, which will justify the court in declaring
as matter of law that the attempt was obviously dan-
gerous, as, for example, the car may be moving at a
great rate of speed, or the person alighting may be old
or infirm, or incumbered with bundles or children.—
*Watkins v. Birmingham Railway Co.*, 120 Ala. 147, 24
South. 392, 43 L .R. A. 297. But no such facts are al-
leged here. We conclude that the demurrer to this plea
was well sustained. Precisely the same line of reason-
ing reaches the fifth plea, the demurrer to which was
sustained.

Of those pleas which seek to set up a violation of a
city ordinance by the insured, it seems sufficient to say
that, while speciously worded, they do not aver a viola-
tion of the ordinance alleged. The ordinance prohibits
persons "to catch hold of, or swing upon, the cars of
said railroad company, while such car is in motion."
The plea is that the death of the insured took place
from her attempting to swing herself from a car while
in motion—a different thing.

There is one other reason, applicable to all those
pleas which set forth the policy, why demurrers to them
should have been sustained: They purport to consti-
tute a full answer to the plaintiff's action, whereas the
limitation in the policy, in the event of death or injury
from the various causes indicated in the pleas, is to

"one-fifth of the amount that would be otherwise payable under this policy."

Plaintiff introduced in evidence certain receipts, one of which showed the payment of policy fee, or original premium, and two the payment of renewal fees or premiums. These receipts were objected to. The natural and easy construction of the bill of exceptions—certainly a strict construction against the exceptor—must be that these receipts had been offered and received in evidence before objection was made. The uniform rule of this court has been to hold that such delay as is shown here waives every objection to the evidence, except that it is illegal, which this evidence was not. But no tenable objection could have been taken at any time. The first receipt showed that the policy had been put into effect. It was cumulative, after the policy had been introduced without objection, and unnecessary, but certainly not irrelevant, incompetent, immaterial, or illegal. The renewal receipts went to the gist of plaintiff's action, and, while the assignments of error predicated upon the rulings admitting them are referred to in appellant's brief, there is no argument to sustain them.

The objection to the renewal receipt signed by William George Fogg came too late, as was the case in respect to the receipts already considered. There were other reasons why the objection to it should have been overruled. The original policy insured Mrs. Julia Reese from 12 o'clock, noon, of September 3, 1907, until 12 o'clock, noon, of the 1st day of October thereafter, and for such further peroids to be stated in renewal receipts, as the payment of premiums would maintain. Paragraph N of the policy was in these words: "If the payment of any renewal premium shall be made after the expiration of this policy, or of the last renewal receipt, neither the assured nor the beneficiary will be

entitled to recovery for any accidental injury happening between the date of such expiration and 12 o'clock, noon, of the day following the date of such renewal payment; * * * nor shall the acceptance of an overdue premium constitute a waiver of the requirement that all renewal premiums be paid in advance as specified in this contract." The second receipt introduced in evidence showed the receipt of a payment on October 1st, continuing the policy in force from that date until November 1st, subject to all the provisions and conditions of the policy. Renewal premiums fell due on the 1st day of each month. The receipt under consideration was dated November 6th, and showed a payment, "renewing," to quote hereafter the receipt, "policy No. 19291 from date hereof until the 1st day of December, 1907, subject to all the provisions and conditions of said policy, particularly paragraph N of said policy, should this receipt be given for a premium collected after it is due as a renewal payment. This premium having been accepted and this receipt given upon the express condition that no claim shall be made, and said company shall not be liable for any indemnity for accident occurring * * * during the interval between 12 o'clock, noon, of the day on which such renewal premium was due, and this day and date one hour following this acknowledgment, and this receipt is accepted upon this condition, by which acceptance all such claims of indemnity are waived. [Signed] Wm. Geo. Fogg, Agent." The evidence showed without conflict that the premium was paid and this receipt issued between the hours of 12, noon, and 1 p. m. of the day of its date. The evidence also showed without conflict that the insured was accidentally killed while alighting from a street car between the hours of 6 and 7 p. m. of the same day. The appellant insists that there was error in permitting proof by the witness Reese that this

receipt was executed by Fogg. No reason, beyond the assertion of counsel, occurs to us why this proof was immaterial, irrelevant, and not pertinent to issues in the cause. It certainly tended to show a contract of insurance between the defendant and the person alleged to have been insured; and if perchance there was error in permitting this proof by the witness Reese, it was harmless, for the reason that subsequently Fogg testified without contradiction that he had executed the receipt.

Further objection is that the receipt was a departure from the original contract. No sort of doubt but that the rule is correct which recognizes that the renewal of a policy of insurance, without more, does not change the terms and conditions of the policy, but merely continues them in force. The rights of the parties are still determined by the provisions of the original policy, no matter how often it may have been renewed. Its terms are neither enlarged, restricted, nor changed.—1 Cooley's Briefs, 849. But the rule has always prevailed, in respect to every character of contract, that after an agreement has been made, and reduced to writing, it is competent for the parties at any time, by a new contract, either altogether to waive or annul the former agreement, or in any manner to add to or subtract from, or vary or qualify, the terms of it, and thus to make a new agreement which is to be proved partly by the original agreement and partly by the subsequent terms, verbal—unless forbidden by the statute of frauds—or written, ingrafted upon what is left of it.—2 Wendell's Blackstone, 382, note. In *Commercial Fire Ins. Co. v. Morris*, 105 Ala. 498, 18 South. 34, the court recognized both rules, saying: "Where, however, there exists a contract of insurance, not expired, and there is an agreement between the parties to renew the policy, and no change is suggested or agreed upon, it will be im-

plied that the renewal contract includes and adopts all the provisions of the existing contract of insurance. Such a contract is complete in all respects, and upon failure to comply with the agreement the party offending may be * * * held liable in a court of law for damages resulting from a breach of the agreement." From page 847 of 1 Cooley's Briefs we quote: "The general custom is to renew by the mere issuance of a renewal receipt or certificate. * * * It is the evidence of a contract." And from page 850: "But the insurer may, in the renewal, agree to indemnify parties other than those named in the original. * * * The property covered will usually be the same, though it is not absolutely necessary." And from section 70a of 1 May on Insurance : "But the renewal may be upon different interests, or interests held in different rights and by different parties, or in other ways the contract may be changed by circumstances. In such cases, the old contract must necessarily be modified, though the conditions may remain the same."

This seems to leave for consideration in this connection the objection that Fogg was not the agent of the defendant, with authority to modify the contract as shown by the renewal receipt. The record does not sustain the contention. The witness Reese testified that the company got the money. Fogg paid it to them, and he had authority to issue receipts for the company. The receipt was in the printed form furnished by the company to its agents, on which they should give receipts and take money. Appellant suggests that Fogg made a mistake. But, if so, the court could not act upon such suggestion, in the absence of proof to sustain it. Nothing is shown of what passed between the insured and the agent, Fogg, except the payment of the money and the issuance of the receipt. In the absence of proof, it is clear that the court had no warrant for as-

suming that the insured received thereby a contract in terms more favorable to her than the company intended or would have issued under the circumstances. That would have been to proceed upon a mere surmise. What we have said disposes of the objection to the receipt in evidence, and of the assignment of error based upon the general affirmative charge for the plaintiff. The plaintiff was not entitled to recover on the first count, as we said in the beginning; but the charge was general, and must be justified, if the plaintiff was entitled to have it on either count. On the undisputed evidence, free as it is from conflict or adverse inference, the plaintiff was entitled to a verdict on the second count.

It only remains to dispose of the following exception: Appellee asked the witness Reese: "When were you informed by the company that Mrs. Reese, the insured, was dead? When, in your recollection, was the company first informed of the death of the insured?" One objection, the one now insisted upon, was that these questions called for hearsay evidence, and not the best evidence of the matter inquired about. The witness answered: "The same day the official letter was written to the company." A motion was then made to exclude the answer on the same grounds. The objection and the motion proceeded both upon an assumption that the company was informed in writing and that the witness had no knowledge of the fact to which he deposed. We cannot indulge either assumption in order to impute error to the trial court.

We have considered every assignment of error insisted upon in appellant's brief. Finding no error, the judgment must be affirmed.

Affirmed.

DOWDELL, C. J., and ANDERSON and EVANS, JJ., concur.