(75 South. 902)

MARYLAND CASUALTY CO. v. McCAL-LUM.   (4 Div. 655.)

(Supreme Court of Alabama.   May 24, 1917.)

1. INSURANCE ☞635—ACCIDENT INSURANCE —PLEADING.

Counts, in an action on an accident policy, alleging that insured received bodily injuries through external, violent, and accidental means, on a specified date during the life of the policy, of which he died within 90 days, thus showing a fulfillment of the condition upon which the insurer's liability depended in the language in which they alleged the condition was expressed in the policy, were sufficient, though not alleging the facts and circumstances attending the injury.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. §§ 1599–1602.]

2. APPEAL AND ERROR ☞1050(1)—HARMLESS ERROR—EVIDENCE.

In an action on an accident policy, where the insurer contended that insured died of typhoid fever, and not of wounds, the physician, who attended insured, so testifying, in view of the issue and the infectious nature of insured's alleged disease, the admission of evidence that none of the customary precautions against communication of the disease were taken, and that no other member of insured's family had or contracted the disease, was not reversible error.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 1068, 1069, 4153, 4157.]

3. APPEAL AND ERROR ☞1050(1)—EVIDENCE ☞193—DEMONSTRATIVE EVIDENCE—HARMLESS ERROR.

In an action on an accident policy, it was proper for the jury to know the weight and size of the sticks used in the assault upon insured, which plaintiff alleged caused his death, and the sticks themselves, produced and identified, would have been admissible in evidence, so that the ruling permitting plaintiff to offer evidence accounting for their absence was harmless.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 1068, 1069, 4153, 4157; Evidence, Cent. Dig. § 678.]

4. EVIDENCE ☞536 — OPINION—QUALIFICATION OF EXPERT—"SURGERY."

In an action on an accident policy, a witness, who did not say he was a physician, but said he was a surgeon, was properly allowed to testify as a medical expert, though in the narrow technical sense "surgery" may consist in the treatment of injuries, deformities, or diseases by mechanical operations only, since a surgeon must know the progress, manifestations, and results of the diseases and injuries he treats.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 2343, 2344, 2347.

For other definitions, see Words and Phrases, First and Second Series, Surgery.]

5. WITNESSES ☞267—CROSS-EXAMINATION.

Plaintiff was entitled to have the jury know in a general way what manner of man a witness was, and the trial court had considerable latitude in controlling the course of the cross-examination, in which were asked questions alleged to have prejudiced the defense with the jury.

[Ed. Note.—For other cases, see Witnesses, Cent. Dig. §§ 923–930.]

6. WITNESSES ☞331½—IMPEACHMENT.

In an action on an accident policy, where a witness was asked whether a policeman brought him a knife, and told him to give it to another witness and to tell him to carry it with him, and whether the witness gave the knife to the other witness and told him what the policeman said, such method of impeaching the other witness was improper.

7. APPEAL AND ERROR ☞1053(1)—HARMLESS ERROR—CURE OF ERROR.

Where plaintiff's attorney suspected the correctness of rulings in his favor on questions impeaching defendant's witness, and moved that the impeaching evidence be excluded, and the trial court responded, "Let the record show that that part of the testimony with reference to the knife * * * on motion of the plaintiff is excluded before the case goes to the jury," the error was not cured; the effort made having been a mere formality, directed to the record rather than to the effect of the evidence on the jury.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4178, 4184; Trial, Cent. Dig. § 977.]

8. EVIDENCE ☞127(1), 128—DECLARATIONS—STATE OF HEALTH OF INSURED.

In an action on an accident policy, insured's declarations as to his present condition, ills, pains, and symptoms, to whomsoever made, are competent, but his declarations as to the cause

───────────────

☞For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

[1] 196 Ala. 638.

of the injury, made after the event, and not part of the res gestæ, though made to his attending physician, are inadmissible.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 377, 378, 383–387.]

9. WITNESSES ⊕236(1)—EXAMINATION—ARGUMENTATIVE QUESTION.

In an action on an accident policy, the question to a medical witness, "If the insurance agent was ready to pay it all, then it wasn't money that prevented the autopsy being held, was it?" was improper as mere argument.

[Ed. Note.—For other cases, see Witnesses, Cent. Dig. §§ 817, 819, 824, 826.]

Gardner, J., dissenting.

Appeal from Circuit Court, Covington County; A. H. Alston, Judge.

Action by Jessie V. McCallum against the Maryland Casualty Company, on an accident insurance policy upon the life of E. Ben McCallum. From a judgment for plaintiff, defendant appeals. Reversed and remanded.

The following are the counts of the complaint mentioned in this opinion:

(2) Plaintiff claims of defendant $1,000 with interest thereon, due on a policy whereby defendant, on the 20th day of January, 1913, insured for a term of one year the life of E. Ben McCallum against bodily injuries, effected directly and independently of all other causes through external, violent, and accidental means, for a term of one year. Plaintiff avers that said policy at the expiration of one year was renewed by defendant for one year, and until the 1st day of January, 1916. Plaintiff further avers that she is the beneficiary named in said policy, and that said E. Ben McCallum received bodily injuries effected directly and independently of all other causes, through external, violent, and accidental means, on or about the 15th day of July, 1913, which resulted in his death, and within 90 days from the date of the accident, and of which defendant has had due notice.

The third is practically the same as the second, with slight changes in phraseology.

The following assignments of error are referred to in the opinion:

(24) The court below erred in overruling objection by defendant to the question propounded to witness John Maulden: "And tell you that it was given him by Mrs. Charlie Hamilton, and for you to take it with you."

(25) Overruling objection to defendant of the following question to witness A. C. Hamilton: "Did Charlie Hamilton, policeman there at that time, bring you a knife—bring a knife to you about two days before the grand jury met—bring a knife to you and tell you to give it to John Maulden and tell him to carry it with him?"

(26) Overruling objection to question to same witness: "And did you give the knife to Maulden, and tell him what Hamilton told you to tell him?"

(27) Overruling motion of defendant to exclude answer of witness in the affirmative to the question last set out.

(23) The court erred in overruling objection to defendant to the question, "If the insurance agent was ready to pay it all, then it wasn't money that prevented the autopsy being held, was it?" propounded to Dr. B. C. Stewart.

The following is charge 6, refused to defendant:

The court charges the jury that if they believe the evidence, McCallum did not die from the injuries inflicted by the blows on his head.

Henry Opp and Powell, Albritton & Albritton, all of Andalusia, for appellant. Parks & Prestwood, of Andalusia, for appellee.

SAYRE, J. Action on a policy of accident insurance brought by appellee against appellant. Plaintiff, the beneficiary named in the policy, claimed that the insured came to his death by reason of wounds received in a personal rencounter in which he was wholly free from fault; defendant claimed that insured died of typhoid fever without contribution from wounds which, it contended, were trivial and inconsequential. There was evidence to support both contentions, and it may as well be said here that, whatever may be thought of the general result, there was evidence to support plaintiff's case, and the court committed no error in refusing charge 1, the affirmative charge, requested by defendant.

[1] Counts 2 and 3 follow the code form of action on a policy of life insurance far enough to suggest that the pleader had the form in mind, and we held in National Life & Accident Ins. Co. v. Lokey, 166 Ala. 174, 52 South. 45, that that form was not applicable to an action on a policy of accident insurance. Both the counts here in question go further in their description of plaintiff's alleged cause of action than did the count to which our observations were directed in the case supra. The counts here do not follow the form literally and throughout as did the count in that case. They allege that the insured received bodily injuries through external, violent, and accidental means, on, to wit, July 15, 1914, during the life of the policy, of which he died within 90 days, thus showing a fulfillment of the condition upon which defendant's liability depended in the language in which they also allege that condition was expressed in the policy. It was not necessary that the facts and circumstances attending the injury should be alleged. 1 Corp. Jur. 489.

[2] Defendant contended, as we have said, that insured died of typhoid fever, and the physician who attended insured in his last illness testified in support of this contention. In view of the issue thus presented and the infectious nature of insured's alleged disease, to which medical witnesses testified, evidence that none of the customary precautions against the communication of the disease were taken, and that no other member of insured's family had or contracted the disease, had some—it may be slight—probative force. At least, the court is not willing to say that its admission constituted reversible error.

[3] It was proper for the jury to know the

weight an'd size of the sticks used in the assault upon the insured, and the sticks, produced and identified, would have been admissible in evidence. While not the best evidence in any sense that would require their production, the sticks themselves would have furnished a satisfactory illustration and explanation of their own capacity for inflicting a fatal injury, and the court is unable to see any harm in the ruling which permitted plaintiff to offer evidence tending to account for their absence. The objection here taken to this evidence, that it was unsatisfactory, that it did not go far enough, was not taken in the court below, could not have been intelligently made or ruled upon until the evidence on the point was closed. The objection in the trial court was most general in form, and went only to the question of admissibility. At no time was any point taken against this particular evidence that it was wholly ineffectual to prove the fact it was intended to prove.

[4] The objection that the witness Blue was not shown to be an expert in the matter about which he was allowed to testify was not well taken. The witness said he was a surgeon; he did not say he was a physician. In a narrow technical sense surgery may consist in the treatment of injuries, deformities, or diseases by mechanical operations only; but a surgeon must know—the law requires that he know—the progress, manifestations, and results of the diseases and injuries which he treats, and hence we hold that Blue said enough of himself to show that he was qualified to speak as an expert of those matters about which he testified. Nor can the objection to the hypothetical question put to this witness be sustained on the ground that there was no evidence to sustain the assumption that one of the blows received by the insured was on the chest. The witness predicated his answer upon the hypothesis that one of the blows was on the side of the chest. This assumption had support in the evidence.

[5] If the record afforded any tangible evidence that the reference to the Miller-Brent Lumber Company, contained in the several questions to the witness Stewart, was intended or had any effect to prejudice the defense with the jury, a reversal would be ordered on that ground. We have been unable to find any such evidence. It must be that the inference of prejudice has been drawn from local conditions with which counsel are familiar rather than from the record by which alone the court here is informed. In this state of the record the court's ruling on these questions may be justified on the ground that plaintiff was entitled to have the jury know in a general way what manner·of man the witness was and the trial court had considerable latitude in controlling the course of the cross-examination in the progress of which these questions were asked.

[6, 7] The court committed reversible error in the rulings shown by the twenty-fourth, twenty-fifth, and twenty-sixth, and twenty-seventh assignments of error. The method of impeaching defendant's witness Maulden here followed was improper and should not have been allowed. Western Ry. of Ala. v. Turrentine, 73 South. 40.[1] True, plaintiff's attorney afterwards became suspicious of the correctness of the rulings in his favor on these questions, and moved· that the impeaching evidence be excluded. To this motion the court responded in the following language:

"Let the record show that that part of the testimony with reference to the knife * * * on motion of the plaintiff is excluded before the case goes to the jury."

This method of curing error cannot be approved as effective. Where evidence has been erroneously admitted, a clear instruction to the jury that it is not to· be considered will ordinarily be allowed to have the effect of curing the error, though· this court has always regarded the practice with ·cautious disapproval. Watson v. Adams, 187 Ala. 490, 65 South. 528, Ann. Cas. 1916E, 565; Green v. State, 96 Ala. 32, 11 South. 478; Smith v. State, 183 Ala. 10, 62 South. 864. In the instant case there hardly seems to· have been any effort to correct any impression this matter of impeachment may have made ·upon the jury; the effort was a mere formality, and was directed to· the record rather than to the effect of the evidence upon the jury.

[8] In Corpus Juris, vol. 1, p. 501, is to be found this statement of the law which we approve as sound and of probable utility on a second trial:

"Declarations by insured as to his present condition, ills, pains, and symptoms, to whomsoever made, are competent"

—and this on page 500:

"But his declarations as to the cause of the injury, made some time after the event, and not part of the res gestæ, cannot be admitted, even though made to his attending physician."

[9] The question made the subject of the twenty-third assignment of error was a mere argument, and doubtless a proper objection to it would have been sustained.·

While we are confident, as a matter of fact on the whole evidence, that the blows insured received on his head had nothing to do with his death, we hardly feel able to· affirm as matter of law on undisputed evidence that such was the case, and hence we will not say that the refusal of charge 6 to the defendant was error.

Other assignments of error need not be specifically treated. Some of them are rather obviously lacking in merit; others are not likely to· recur in their present shape.

Reversed and remanded. All the Justices· concur, except

GARDNER, J. (dissenting). This cause was reversed upon the one point that a witness for the defendant was as to one imma-

[1] 197 Ala.·603.

terial statement allowed to be contradicted, although this evidence was, subsequently on motion of counsel for plaintiff, excluded, and this upon the theory that the court failed to specifically instruct the jury in regard to the same.

In dissenting from the majority view I am, of course, fully mindful of the rule established by the decisions of Watson v. Adams, 187 Ala. 490, 65 South. 528, Ann. Cas. 1916E, 565, and Green v. State, 96 Ala. 32, 11 South. 478, and cases of like character refered to in the opinion. The rule as established · in such cases, requiring specific direction to be made by the court to the jury to the effect that such evidence is not to be considered, was one established by the court in furtherance of justice. It has, however, for its very foundation, the fact that the evidence introduced and subsequently excluded was of such a prejudicial character and so likely to impress the jury unfavorably that it calls for direct instructions from the court. I differ from the majority, not in the rule established in these cases, but in its application to the instant case.

I have read many of the cases, but time will not permit a review of them here. After all, each case must stand upon its own peculiar facts and circumstances, but I have found none in which a reversal was ordered where the evidence was, as here, merely a contradiction on one single point by a witness on an entirely immaterial matter. An examination of the authorities will disclose that the illegal evidence therein treated was considered as clearly of a very prejudicial character. The question arose in the instant case in the following manner: One Maulden was a witness for the defense, who had testified to but few facts, and nothing in regard to a knife. On cross-examination, in answer to the question to that effect, he denied that one A. C. Hamilton handed him a knife about two days before he went before the grand jury, and the witness A. C. Hamilton called by plaintiff was permitted to state that he had given the knife to Maulden. This, the court holds to have been entirely immaterial, and of course, had it not been immaterial the contradiction would have been proper testimony.

The rule is, as established in this state, as a matter of policy, that a witness may not be impeached by contradiction on immaterial matters for the principal reason, of course, that this would tend to lead the mind of the jury away from the main issues of the case.

At the conclusion of the evidence in the cause, counsel for plaintiff, realizing that under the rule established this evidence was inadmissible, moved the court that the same be excluded. What occurred at that time was all done, presumably of course, in the presence and hearing of the jury, and was as follows, as disclosed by the record on page 95:

"Mr. Parks (addressing the court): We move to exclude that portion of the evidence offered by the plaintiff on yesterday, that Charlie Hamilton was connected with the Miller-Brent Lumber Company, and that he gave a knife to another Hamilton—this testimony pertaining to that knife transaction which was testified about by Maulden—that Hamilton gave a knife to Maulden and told him that Hamilton gave it to him to give to him. Now we move to exclude that testimony and also the testimony of Dr. Stewart, that he was connected with the Miller-Brent Lumber Company.

"Mr. Powell: But that is his own testimony.

"Mr. Parks: And I have a right to move to exclude it if I want to, and it is right. I have a doubt about it, and I now make the motion to exclude it.

"The Court: Let the record show that that part of the testimony with reference to the knife, and with reference to Dr. Stewart's connection with the Miller-Brent Lumber Company, on motion of. the plaintiff, is excluded before the case goes to the jury."

As above stated, this contradiction was in regard to this one entirely immaterial matter, and was excluded by the court on motion of the counsel for plaintiff in the presence and hearing, presumably, of the jury. Clearly the jury understood the full meaning of all that was said and done, and realized fully that counsel for plaintiff himself was of the opinion that this evidence should not be considered, and all with the sanction of the court. I cannot conceive that this was evidence of such a character so prejudicial as to call for the application of the rule so strictly applied in the majority view, but it appears to my mind, after an examination of the entire record, it was a matter clearly without any bearing whatever upon the result.

Counsel for defendant filed a motion for a new trial, which was overruled, as appears on page 96 of the transcript. I think it worthy of note that the motion for new trial contained seven grounds, and not one of them relate to this question, nor, indeed, to any question of evidence whatever. It would appear, therefore, that counsel, fresh from the trial of this cause, attached but little significance to this single question which now looms so large and becomes so important as to be the sole basis for a reversal of this cause.

In my opinion, the rule established in the cases above cited has been by· the majority too far extended, and is an unwise precedent. I forego, however, further discussion of the question, but have considered the case as of sufficient importance to call for a brief expression of my views. While I concur in the conclusion of the majority that there was no error in the refusal of charge 6 to defendant, yet I think it proper to state, in view of a new trial of the cause, that I am not in accord with the treatment given said charge in the majority opinion, wherein it is said:

"While we are confident as a matter of fact on the whole evidence that the blows insured received on his head had nothing to do with his death. * * *"

I have read the evidence in the case with great care. There was testimony offered on

the part of plaintiff tending to show that the deceased was struck two severe blows on the head by one Corbin with what is known as a "stacker stick," which was about an inch and a quarter thick, averaging two inches in width and four feet in length; that he was struck from behind; that he did not fall, "but kinder sunk down a little bit." This occurred on July 15, 1914, and the insured died on August 12, 1914, and there was evidence tending to show that he had fever that night, which continued until the time of his death; that he had no appetite; that his mind became affected to some extent, and that he complained of pains in his head and back.

The majority opinion concedes that it was a question for the jury as to whether or not his death was caused by the blows on his head, but I merely do not wish to approve the language above quoted by way of expression of opinion upon this particular fact, and I have thought it proper, in view of another trial of this cause, to thus make my position clear. Upon this question I prefer to express no opinion whatever.

I respectfully dissent from the view of the majority in the reversal of this cause.