This is a land line case. Hollis Lowery and his wife, Maudine, brought an action against Benny Stewart alleging trespass and intentional infliction of emotional distress. The jury returned a verdict against the defendant for $12,500.00. The trial court entered a judgment based on the jury's verdict; it denied the defendant's subsequent motion for a judgment notwithstanding the verdict or in the alternative a new trial. The defendant appeals.
The Lowerys owned a 79-acre farm in Bibb County which had been in the Lowery family for several generations. During the early 1950s Mr. Lowery borrowed money from a bank to finance the purchase of a tractor and other farming implements and he mortgaged the farm to secure repayment of the loan. Lowery was unable to fully repay the loan. Mr. Lowery was visited *Page 1057 
one day by a Mr. John Desmond, who told him that the bank was preparing to foreclose on its mortgage. Mr. Desmond offered to buy the property. Fearing that he would lose his home, Lowery agreed to sell the parcel to Desmond for what he owed on the the tractor if Desmond would agree to allow Lowery and his wife to retain title to the "John A. Lowery houseplace lot" and all the buildings on the lot. Desmond agreed. On December 31, 1954, Mr. and Mrs. Lowery conveyed all of the farm except the houseplace lot to Mr. Desmond. The defendant, Mr. Stewart, is a successor in title to Mr. Desmond. The controversy in this case concerns the boundaries of the houseplace lot.
In order to obtain a description of the property to draw up the deed from Lowery to Desmond, Desmond and another man went out to the property with a steel tape and marked off about three acres around the house and set stobs down to designate the boundaries. The description of the houseplace lot which was incorporated into the deed states that the Lowerys retained title to "3 acres more or less . . . known as the old John A. Lowery houseplace . . . with the buildings thereon," more particularly described by a series of calls beginning at a quarter-quarter section and going first "due west," then "in a southwesterly direction," then in a "northwesterly direction," and so forth. Because each angle described by the deed could vary by as much as ninety degrees, it is impossible to determine with any precision from reading the deed where the boundaries of the property are.
Both the Lowerys and John Desmond testified as to their understanding of what was conveyed by the deed. John Desmond testified that he placed a stob representing the beginning point of the metes and bounds description about fifteen or twenty feet in front of the Lowerys' house. If that point represents the southern boundary of the property, the houseplace lot ends along the northern edge of the road running in front of the Lowerys' home. Desmond testified that when he purchased the property he thought he was buying all the land south of the road. Mr. Lowery testified that when he conveyed the property to Desmond he intended to convey all the land south of a hedgerow which was south of the road. He presented evidence to the effect that there was a corn crib, a chicken house, and a storm shelter located south of the road and north of the hedgerow. The Lowerys claim that the buildings south of the road were included among the buildings on the John A. Lowery houseplace lot. Moreover, he and other members of his family testified that they had exerted exclusive dominion and control over the property up to the hedgerow until this dispute arose.
John Desmond conveyed the farm to George Desmond, who conveyed it to Bennie Stewart in 1978. During the more than twenty years which elapsed between the time of the original conveyance and Stewart's purchase, the corn crib and chicken house had fallen in and their remnants had been removed. A paved area used for vehicles to turn around in, some trees, and the hedgerow remained in the area in question. Beyond that was an open field which was undisputedly owned by Stewart.
After he bought the property, Stewart had the land south of the road bulldozed in order to facilitate the erection of a fence. This destroyed the hedgerow and knocked the trees down. The dispute arose when Stewart began building the fence.
Stewart raised four issues on appeal:
 (1) Whether a statement by Lowery to his physician that he was involved in a boundary dispute with a neighbor was admissible.
 (2) Whether copies of affidavits of adverse possession and certain photographs were admissible.
 (3) Whether the trial court erred in failing to direct a verdict on the outrageous conduct count.
 (4) Whether the evidence was sufficient to support the verdict.
 I.
After a confrontation with Stewart, Lowery became ill and had to be hospitalized. *Page 1058 
Notes taken by Lowery's physician during an examination stated that Lowery had "been worried over a boundary dispute with his neighbor for several weeks," and added, "This has created a lot of anxiety and concern for him. He has developed more and more epigastric pain. The findings suggest peptic ulcer." This statement was allowed into evidence over the defendant's objection.
The defendant argues that admission of the statement into evidence constituted reversible error. He contends that declarations as to the cause of a person's injury made after the event are inadmissible even when made to an attending physician, citing Maryland Casualty Co. v. McCallum, 200 Ala. 154, 156,75 So. 902 (1917). Stewart points out that the physician had treated Lowery for peptic ulcer problems and colitis for several years and, therefore, argues that information about the boundary dispute was not necessary to his diagnosis and treatment.
A physician who is properly qualified as an expert and who has treated a patient can give his opinion as to the nature, cause, and extent of the patient's condition. State Realty Co. v. Ligon,218 Ala. 541, 543, 119 So. 672 (1929). See C. Gamble, McElroy'sAlabama Evidence, § 110.01 (1) and (2) (3d ed. 1977). The physician may also testify to the facts on which that opinion is based. In addition to relating his own observations of the patient, the doctor may testify to statements made by the patient in the form of a medical history so long as the facts in the history are part of the basis of the physician's opinion of the nature and extent of the injury. Lowery v. Jones, 219 Ala. 201,202, 121 So. 704 (1929); Alabama Power Co. v. Edwards, 219 Ala. 162,166, 121 So. 543 (1929); Birmingham Union Railway Co. v.Hale, 90 Ala. 8, 10, 8 So. 142 (1890); Frazier v. State,366 So.2d 360, 365-66 (Ala.Crim.App. 1979).
 "This history may include a statement of present and past symptoms, the incidents connected with the beginning of the trouble, such as injury by accident, and the findings of other physicians, such as X-ray examination and blood tests. A professional opinion as to the nature, cause, and extent of the ailment, based upon all these matters in connection with and as part of the personal examination of the patient, is competent evidence." State Realty Co. v. Ligon, 218 Ala. at 543, 119 So. at 674.
The statements made to the physician may not be admitted for the purpose of establishing what happened or who was at fault. Examples of statements which have been ruled admissible include a statement that a patient was injured where there were no references to the cause or manner of the injury, Birmingham UnionRailway Co. v. Hale, supra; a statement that the patient had been injured while riding a streetcar, Alabama Power Co. v. Edwards, supra; a statement to the effect that the patient had been in an automobile accident, McLaney v. Turner, 267 Ala. 588,104 So.2d 315, 324 (1958); and a statement that the patient had been "involved in this trouble in his home by an intruder," and that "They got into a scramble and in some way he injured his left knee and right wrist," Frazier v. State, 366 So.2d 360, 365
(Ala.Crim.App. 1979).
The proposition in the opinion relied on by the defendant was an abstract statement of law given as dictum. See MarylandCasualty Co. v. McCallum, 200 Ala. 154, 156, 75 So. 902 (1917). Since the opinion does not relate the patient's statement to which it is referring, it is impossible to determine how the rule was applied in that instance. Based on the other cases speaking to that question, however, it is apparent that the trial court's ruling in the present case was correct. It is medically accepted that stress is a contributing factor in the development and aggravation of ulcers. The statement that the patient suffering with the symptoms of ulcers is experiencing stress related to a boundary line dispute can fairly be described as a part of the basis of the treating physician's opinion. Moreover, the naked statement that the plaintiff was involved in a land line *Page 1059 
dispute did not suggest a position as to the merits of the dispute. Nor does it suggest the identity of the other party to the dispute.
 II.
After the last witness called during the plaintiff's case in chief finished testifying, plaintiff's attorney sought to introduce certain exhibits which had been marked but not admitted into evidence. Defendant stated that he objected to the introduction of any exhibits which were not "offered through witnesses." On appeal the defendant argues that two of the exhibits should not have been admitted because they were not properly authenticated.
One of the exhibits admitted into evidence was an affidavit of adverse possession. The other was a photograph of a portion of the disputed property. Without discussing the merits of defendant's objections to the admission of the affidavit, we note that the affidavit was discussed by Mr. Stewart during his testimony and that he read a portion of the affidavit into the record in response to questions from his attorney. Having used the affidavit in connection with his testimony, he cannot challenge its admission into evidence. See Payne v. Jones,284 Ala. 196, 224 So.2d 230, 234 (1969); Taylor v. State, 249 Ala. 130, 30 So.2d 256, 259 (1947); Davis v. State, 35 Ala. App. 144,44 So.2d 275 (1950). The photograph is one of numerous photographs of the property which were introduced. It is of no special significance, and any error associated with its introduction into evidence was harmless. Rule 45, A.R.A.P.
 III.
Defendant argues that the trial court erred in failing to grant his motion for a directed verdict on the count alleging intentional infliction of emotional distress. He made the motion for a directed verdict at the close of the plaintiff's case and renewed it at the close of all the evidence. Plaintiff's attorney responded "Fine; I'll stipulate to that. That the jury won't be charged as far as that outrageous conduct claim is concerned." In its charge to the jury the trial court read the complaint and the answer and charged the jury without referring to the tort of outrage.
On appeal defendant argues that the trial court improperly put the issue of outrageous conduct before the jury without charging the jurors on the elements of the action. We disagree. This issue was raised for the first time on appeal. At the trial the defendant objected neither to the reading of the complaint nor to the failure of the court to mention the tort of outrage during the jury charge. No party may assign as error the giving of an erroneous charge unless he objects to the charge given before the jury retires. A.R.Civ.P. 51.
 IV.
Finally, the defendant argues that the evidence did not support the jury's verdict. Many of his arguments are, in effect, requests for us to weigh the evidence. That is something we cannot do. This Court must review the tendencies of the evidence most favorably toward the prevailing party and indulge such inferences as the jury was free to draw. Mahoney v. Forsman,437 So.2d 1030 (Ala. 1983).
The description of the parcel in the deed to John Desmond was too ambiguous to determine solely from the information in the deed whether the disputed area was conveyed. It refers to the John A. Lowery houseplace lot and the buildings thereon and contains a metes and bounds description with calls which do not state the degree of the angles constituting the corners, but merely suggest general directions (e.g., "thence go in a southwesterly direction 232 feet to a steel post; thence go in a northwesterly direction for a distance of 392 feet to a steel post").
When a description is ambiguous, parol evidence is admissible to show what the parties intended to convey. Reynolds v. Trawick,197 Ala. 165, 72 So. 378 (1916): *Page 1060 
The Lowerys testified that there was a corn crib, a storm shelter, and a cotton house south of the road, which they intended to retain as part of the houseplace lot and that the recognized boundary between the properties was the hedgerow which Stewart plowed up.[1] Therefore, there was sufficient evidence to support a finding that the property in question was retained by the Lowerys.
Punitive damages may be awarded in a trespass action where the trespass was accompanied by rudeness, wantonness, recklessness, or an insulting manner. First National Bank of Pulaski, Tenn. v.Thomas, 453 So.2d 1313 (Ala. 1984). In the context of a trespass action, the word "wanton" refers to an invasion of the plaintiff's property with knowledge of the violation of the plaintiff's rights. Calvert Marsh Coal Co. v. Pass,393 So.2d 955, 956 (Ala. 1980). Without a discussion of the particulars of the dispute, it is fair to say that there was evidence from which the jury could have found that even after he was put on notice that the Lowerys claimed the property between the road and the hedgerow Stewart continued coming on that property and piling debris, erecting fence posts, and doing other acts which could have led the jury to conclude that Stewart attempted to take over property that did not belong to him.
The trial court's judgment is hereby affirmed.
AFFIRMED.
ALMON, ADAMS and HOUSTON, JJ., concur.
TORBERT, C.J., concurs specially with opinion.
MADDOX, J., concurs specially with opinion.
[1] While the complaint did not request the court to establish the boundaries of the properties and did not seek to quiet title to the disputed property, a finding that the Lowerys owned part of the property south of the road was necessary to a finding that the defendant had trespassed on the plaintiffs' property, since the acts in question took place south of or on the road.