ADAMS, Justice.
This is an appeal by James W. Fort and Dolores Fort from an order setting aside a $100,000 verdict in their favor and granting a new trial. We affirm in part and reverse in part.
The evidence indicates that in 1985, representatives of AT & T approached the Forts, seeking to obtain an easement that would permit AT & T to lay an optic fiber cable across the Forts’ property. The evi *136 dence suggests that, when the Forts were unwilling to grant the easement, AT & T contacted Smoke Rise Development Corporation, the developer of the Forts’ subdivision, and obtained an easement across the front of the Forts’ property.[1] After being notified by AT & T attorneys of its action and its intent to lay cable across his property in spite of his objections, James Fort purchased and hung several “no trespassing” signs and strung wire across his rear property line. AT & T alleges that it thereafter sought a permit to bury the cable along the right-of-way of old Highway 31, which paralleled the Forts’ rear property line. Although the permit was not granted until July 1986, in May 1986 two men from a clearing crew cut one hardwood tree and approximately 20 saplings from the rear of the Forts’ property. The Forts contend that in order to do so, the men had to have ignored his signs and crossed under or over his wire. Subsequently, the cable was successfully buried outside of the Forts’ property line and along the right-of-way of old Highway 31.
The Forts sued AT & T, alleging trespass, slander of title, breach of warranty of quiet title and peaceful possession, denial of access to Highway 31, infliction of mental distress, and outrage. The trial court directed a verdict in favor of AT & T on all counts except the trespass count. The jury returned a verdict against AT & T for $100,000 on the trespass count; the trial judge thereafter granted a new trial, and his order stated in part as follows:
“After a careful review of the record and of the briefs submitted by the parties, the Court is of the opinion that the jury's verdict should be set aside and a new trial granted as to the trespass claim. The record demonstrates that the testimony and exhibits received at trial in support of the plaintiffs’ trespass claim were greatly outweighed by the evidence of the plaintiffs’ other claims, particularly the claims for punitive damages for slander of title. Although each of these other claims was removed from the jury’s consideration by the Court’s directed verdict, it is apparent that the cumulative effect of all of the testimony and all of the exhibits was to confuse the issues in the minds of the jurors. The Court is satisfied that no testimony or exhibits were improperly received, and is further satisfied that the jury was correctly charged as to the trespass issue before it. However, judging from the verdict and the size of the damages award, and considering all of the evidence cumulatively, the credibility of the witnesses, and the arguments of the counsel at trial, it is the Court’s opinion that the ends of justice would best be served by granting a new trial on the trespass claim. Bekins Van Lines v. Beal, 418 So.2d 81 (Ala.1982).” (Emphasis added.)
The appellant in Bekins Van Lines v. Beal, 418 So.2d 81 (Ala.1982), cited by the trial judge to support the granting of a new trial, raised the following grounds in support of his motion for new trial:
“1. The verdict is contrary to the law.
“2. The verdict is contrary to the evidence.
“3. The evidence considered in the most favorable light in behalf of the Defendant is insufficient to support any verdict that might be rendered for the Defendant herein.
“4. The evidence was, as a matter of law, that the injuries sustained by Plaintiff, if any, on May 2, 1978, were the result of wanton conduct on the part of the Defendant. Defendant’s [counsel] even admitted in the closing argument that Defendant did wrong.
“5. Opposing [counsel] addressed jury members individually during the summation constituting prejudice and reversible error.
“6. Noise from the construction immediately outside the Courtroom prevented ■ the jury from hearing part of the testi *137 mony and jury instructions so that there was insufficient evidence and/or jury instructions to support a verdict and/or to constitute proper instructions to the jury.
“7. Members of the jury heard the Judge’s instructions in that the burden of proof of Plaintiff was ‘beyond a shadow of a doubt’ which is an improper and prejudicial burden of proof. Note that this is based on the Affidavits of the jurors attached to this Motion and not in the instructions.
“8. One juror was asleep during a large portion of the trial and for this reason Plaintiff was not afforded a trial by 12 qualified jurors but was given a trial by one juror who heard part of the evidence and could, therefore, only contribute to part of the deliberation which could be worse than no contribution at all.
“9. One juror was interested in another trial, as opposed to this trial, to the point that the jury and the Court waited, on more than one occasion, for her to return from the other Courtroom so we could continue. Thus, obviously, that same juror was not properly listening to the evidence or the ease and could, perhaps, cause more harm than good in deliberation.
“10. The decision was not a unanimous one as required by law. When the jury was polled, one member did not positively state that this was her verdict.” ”
Id. at 82-83. The trial judge, in granting the motion, stated:
“Having considered all the grounds asserted by the plaintiff in support of their [sic] said Motion, it is the opinion of this Court that no one ground cited standing alone would be of sufficient import to require the granting of a new trial, but the Court is satisfied upon considering all grounds cumulatively that the ends of justice would better be served by granting a new trial.”
Id. On appeal, we affirmed, stating as follows:
“The real issue presented by the trial judge’s order is whether a trial judge may grant a new trial based on the cumulative effect of alleged errors. We hold that such an order is permissible, and is presumed to be correct unless plainly and palpably wrong. Kerns v. Lenox Machine Co., 74 Ill.App.3d 194, 30 Ill.Dec. 33, 392 N.E.2d 688 (1979). See Hill v. Cherry, 379 So.2d 590 (Ala.1980); Johnson v. Hodge, 291 Ala. 142, 143, 279 So.2d 123 (1973).
“A trial judge may weigh the credibility of the evidence and the witnesses, and may grant a new trial if the jury’s verdict is not supported by the evidence or if substantial injustice would occur if a new trial were not granted. See Bazile v. Bisso Marine Co., 606 F.2d 101 (5th Cir.1979). A trial judge may properly grant a new trial even in a situation in which the granting of a directed verdict or judgment notwithstanding the verdict would be improper. Id.; 5A Moore’s Federal Practice 50.03 (3d ed. 1976). Furthermore, the trial judge may grant a new trial on grounds which might not constitute reversible error on appeal. In sum, a new trial is a less drastic remedy for errors that occur at trial. Thus, as in the present case, there may be a situation in which several events at trial lead to the conclusion that a new trial should be granted to prevent injustice, even though, taken alone, the events may not warrant the granting of a new trial.”
Id. at 84. In the case sub judice, we are of the opinion that the trial judge erred in granting a new trial on the trespass claim and that his decision was plainly and palpably wrong. We have reviewed the entire record and conclude that the only possible reason for granting a new trial was the amount of the jury verdict, which, in and of itself, does not warrant such action by the trial judge:
“Courts do not favor setting aside a verdict for damages merely because in [their] opinion the jury gave too little or too much. Stinson v. Acme Propane Gas Co., 391 So.2d 659 (Ala.1980).”
Woods v. Hicks, 516 So.2d 656, 659 (Ala.Civ.App.1987). The appellant has correctly *138 pointed out that much of the evidence admitted to prove the claims other than the trespass claim would also have been admissible to show that the trespass was “wanton,” which, in the context of a trespass action, has been said to refer to “an invasion of the plaintiffs property with knowledge of the violation of the plaintiff’s rights.” Stewart v. Lowery, 484 So.2d 1055, 1060 (Ala.1985). “Punitive damages may be awarded in a trespass action where the trespass was accompanied by rudeness, wantonness, recklessness, or a insulting manner. First National Bank of Pulaski, Tenn. v. Thomas, 453 So.2d 1313 (Ala.1984).” Id. Furthermore, it is not “apparent” to us that the jury was confused. The appellant in Bekins offered specific reasons, which, when taken cumulatively, necessitated a new trial — such as the fact that one juror slept during much of the trial while another juror was habitually late returning from recess due to an interest in another trial. In this case, the trial judge has offered nothing more than speculative generalities in support of his assumption that the jurors were confused. There is nothing other than the size of the award to support an argument that a new trial was warranted. The Forts offered evidence of every element of trespass, as well as evidence of wantonness to warrant punitive damages.
The Forts also raise other issues regarding the directed verdict in favor of AT & T on the other counts. However, they stipulated in their brief that these arguments would be withdrawn in the event that the trespass award was reinstated. Therefore, we will not address these issues, and we affirm the trial court’s ruling in that regard. For the foregoing reasons, the judgment of the trial court is affirmed insofar as it is based on the directed verdicts regarding slander of title, breach of warranty of quiet title and peaceful possession, denial of access to Highway 31, infliction of mental distress, and outrage; the order granting a new trial on the trespass claim is reversed, and the cause is remanded for the entry of a judgment based on the jury verdict.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
HORNSBY, C.J., and MADDOX, ALMON and STEAGALL, JJ., concur.

. The developer, by covenant with purchasers of land in the subdivision, retained the right "to grant easements for the installation and maintenance of utilities along the public roads as shown on the recorded plats.” An AT & T witness stated that this easement would apply only to the front of the Forts’ lot.