(111 So. 337)

No. 26208.

COOK & RUSS v. GULF REFINING CO. OF LOUISIANA.

(Jan. 3, 1927.)

*(Syllabus by Editorial Staff.)*

1. **Work and labor ⬅29(1)—Rate of charge prevailing in locality is considered as in contemplation of shorthand reporters and employer not having agreement concerning compensation.**

Shorthand reporters and employer, not having agreement as to compensation for reporting trial of case and furnishing daily transcript of proceedings, are to be considered as contemplating the rate of charge prevailing in the locality where the work is done.

2. **Work and labor ⬅29(1)—Charge of shorthand reporters, having no agreement as to compensation, held governed by actual count of words rather than by estimate.**

Actual count of words taken by shorthand reporters *held* to govern charge, rather than reporters' estimate, where no agreement as to compensation was made, although it was custom of stenographers generally to charge according to estimate.

3. **Work and labor ⬅29(1)—Shorthand reporters, having no agreement as to compensation, held properly allowed actual cost of board and lodging and traveling expenses.**

Traveling expenses and $5 for actual cost of board and lodging, rather than $10 per day for expenses, was proper allowance to shorthand reporters having no agreement as to compensation for reporting trial.

4. **Work and labor ⬅29(1)—Thirty cents per 100 words held properly allowed shorthand reporters furnishing daily transcript of court proceedings (Act No. 64 of 1900).**

Court properly allowed shorthand reporters, having no agreement as to compensation, 30 cents per folio of 100 words, for furnishing daily transcript of court proceedings and three additional copies, in view of Act No. 64 of 1900.

Appeal from Civil District Court, Parish of Orleans; Mark M. Boatner, Judge.

Suit by Cook & Ross against the Gulf Refining Company of Louisiana. From the judgment, plaintiffs appeal. Affirmed.

Harry P. Gamble, of New Orleans, for appellants.

Spearing & Mabry, of New Orleans, and J. S. Atkinson, of Shreveport, for appellee.

ROGERS, J. The facts of this case are tersely and correctly stated in the able opinion herein handed down by the district judge as follows, viz.:

"The plaintiffs are shorthand reporters, living at Shreveport. They were employed by the defendant's attorney to report the trial of a case at Homer in the district court of Claiborne parish, and to furnish each morning before the opening of court a transcript of the proceedings of the day before, with three additional copies. There was no understanding with regard to their compensation, except that the attorney was told by Mr. Russ, with whom he dealt, that the furnishing of the 'daily copy' would add to the cost.

"The trial began on Monday, January 3, 1922, and was concluded on January 14, 1922. During the first week the court sat from 9 o'clock in the morning until 6 o'clock in the evening, with a recess of one hour at midday; after that a night session of two hours was added. The first week the work was done by the two plaintiffs; for the second it was necessary to employ an additional stenographer."

On the conclusion of their work, plaintiffs rendered defendant, through its attorney who had employed them, a bill for $3,050.50 to cover their services and expenses, the ex-

penses being charged on a per diem basis of $10 for each of the three stenographers while attending court, and amounting to $220. Defendant declined to pay the bill on the ground that it was unreasonable, and this suit was instituted to enforce collection. The judge a quo allowed plaintiffs $1,118.08 for their services and $161 for their expenses, a total of $1,279.08. Plaintiffs were dissatisfied with judgment, and appealed therefrom.

In support of the correctness of the charge for their services, plaintiffs have introduced into the record the testimony of four shorthand reporters employed in the courts of the city of New Orleans, together with the depositions of a number of shorthand reporters living in other cities of the country. All these witnesses agree that plaintiffs are entitled to extra compensation for their services in furnishing daily copies. Because of the different sections of the country in which they reside, they vary somewhat in their estimates of what that additional compensation should be. Defendant neither denies nor contests the right of plaintiffs to be paid for their extra work. Its contention is that their charge for that work is excessive.

[1] In the absence of a fixed salary, the uniform custom among shorthand reporters is to base their charge upon the size of the transcript which they turn out. The rate varies according to the sections of the country in which the services are rendered. In the case at bar, the rate for official court reporting in every parish of the state, except Orleans, was 15 cents per folio of 100 words, with the requirement that three carbon copies of the transcript be furnished without extra charge. Act No. 64 of 1900. This was the basis upon which plaintiffs performed their work in the section of the state in which they live and labor. There is no proof in the record of any instance in that portion of the state, where the attorney of the defendant who employed plaintiffs, also lives and practices his profession, in which a higher rate was paid for ordinary reporting. It is

the conditions existing in the locality where the work was done, and not the conditions obtaining in other places, which must be considered as having been in the contemplation of the parties when they entered into their relation of employer and employees.

[2] The judge a quo accepted the legal rate of 15 cents per folio of 100 words as the customary rate in the place where plaintiffs' services were rendered. He doubled this rate, allowing plaintiffs 30 cents per folio of 100 words, with no allowance for furnishing the extra copies of the transcript. Plaintiffs' demand is based upon a claim of 538,333 words in the transcript, which they arrived at by estimating 666⅔ words to a page of single-spaced lines for 809 pages. An actual count of the words in the transcript showed, however, that it contained 372,695 words. This was the basis of calculation used by the district judge in fixing plaintiffs' compensation. We do not see any force in plaintiffs' argument that their estimate of the words in the transcript should govern rather than the actual count of said words, because it was their custom, and the custom of stenographers generally, to estimate the number of words on a page and then to charge accordingly. It is undoubtedly true that stenographers engaged in reporting testimony estimate, and do not count, the number of words in their transcripts in rendering their bills. But they have adopted this method of ascertaining their charge in a given case in order to save labor and as a matter of convenience. The idea underlying the practice is that, generally, the estimate of the words is approximately correct. In the present instance the difference between the count and the estimate is 165,638 words. In all cases, the basis of the stenographic charge is the number of words in a transcript, ascertained by an estimate if the employer is willing to accept it in that way, or determined by actual count if the employer so requires.

[3] On the question of the claim for a per diem charge and for expenses, we agree in

the conclusion reached by the judge a quo as expressed in his written opinion on file in the record, viz.:

"There is no justification in the record for the plaintiffs' per diem charge of $10, but, since the plaintiffs were taken from their homes to serve the defendant, it seems fair to allow them their traveling and living expenses. One of the plaintiffs estimated that these expenses would amount to $10 a day, but he gave no details. On the other hand, Mr. Atkinson, in his testimony, states the railroad fare precisely, and says that the charge at the hotel where the plaintiffs and their assistant lived was $5 a day for board and lodging. Accepting Mr. Atkinson's figures, I allow the plaintiffs for expenses $161."

[4] In commenting upon the amount of his judgment, the district judge shows that it works out so as to allow compensation at the rate of $46.58 a day for each of the plaintiffs and their assistant, which he states "cannot be said to be inadequate." After close study of the testimony and careful attention to the argument, oral and by brief, of counsel for the parties, we are unable to see wherein we can do any better than the district judge has done in fixing the amount of plaintiffs' recovery.

For the reasons assigned, the judgment appealed from is affirmed; costs of appeal to be paid by appellants.

ST. PAUL, J., concurs in the decree.