200 So. 888

## CITY OF BIRMINGHAM v. LEVENS.

### 6 Div. 696.

Supreme Court of Alabama.

Feb. 27, 1941.

Rehearing Denied March 27. 1941.

C. D. Comstock, of Birmingham, for appellant.

Lange, Simpson, Brantley & Robinson and Ormond Somerville, Jr., all of Birmingham, for appellee.

John S. Foster, of Birmingham, for appellant.

Clifford Emond, of Birmingham, for appellee.

FOSTER, Justice.

This is an action for personal injuries received by plaintiff due to having sustained a fall on the sidewalk in the city of Birmingham.

The questions relate to rulings on evidence, refused charges and overruling a motion for a new trial.

The evidence shows that about ten or eleven o'clock in the morning, plaintiff

stopped her car parallel with the curb, alighted on the right next to the curb, locked the door and turned to go to a doctor's office, and stumbled on an angle iron stake, two inches by a quarter of an inch, with one end embedded in the concrete sidewalk. It was sticking up four to six inches, and standing about twelve inches in from the outer side of the curb. It was said to be left from a stake holding a sign for "no parking" or "boulevard stop." The evidence for plaintiff tended to show, without contradiction, that this condition had existed in a location which the circumstances show could have been frequently used as plaintiff did on that occasion.

The court permitted the witness Balance, whose business was near this location, to testify over objection that he had seen people stumble over this obstruction in the day time but without any of them falling, and that he had done so himself. No details were given in relation to this accident sustained by plaintiff.

The court permitted the witness Nunnelly, whose place of business was also near the location in question, to testify that he had been in business out there since December, 1936, and had observed this piece of iron sticking up from the sidewalk, and, over the objection of defendant, that he had seen four or five children and an equal number of adults stumble or trip; that he did so himself. This was over a period of two years. But he did not testify that any of them fell, and did not recall any particular incident nor its exact time, except that it was "day time."

The court also permitted the witness Burnett, who ran a shoe shop at this location, to testify that he had seen in the eighteen months he had been there many people trip over this obstruction, and one man had the heel of his shoe hung and torn off, which the witness had fixed. But he did not testify that any of them fell, nor give any other particulars than the shoe incident.

The question on which much argument in briefs submitted is grounded, relates to the legality of such evidence.

There are two theories on which it has been argued. If competent on one of them, others need not be considered. (1) That such evidence tends to show that the location was not reasonably safe for pedestrians in the exercise of due care, not knowing of its existence and not charged with a special duty to expect or look for something of the sort. (2) That it is a circumstance material to show that the city had notice of the defect and neglected to remove it as it should have done in the exercise of due diligence.

With respect to the first of them, the fact that the evidence does not show that any of the persons, who stumbled on the obstruction fell, should not be of controlling importance. For the fact of stumbling on such an obstruction without falling may have been due to the agility of the person rather than reasonable safety at the location. So that on this theory we will not give such importance to that circumstance. There are numerous cases decided by this and other courts in which there is no harmonious, well-defined principle declared as to when such evidence is or not admissible. In some it was admitted and in others denied.

Evidence that other people fell at the same location is said to be admissible on the issue of its dangerous qualities, if they occurred at about the time plaintiff fell, and the conditions existing were about the same. Perrine v. Southern Bitulithic Co., 190 Ala. 96, 66 So. 705.

Without much discussion, this had previously been held in Birmingham Union Ry. Co. v. Alexander, 93 Ala. 133, 9 So. 525.

The question of the time of the occurrences when others fell seemed to have controlling influence in Mayor and Aldermen of Birmingham v. Starr, 112 Ala. 98, 107, 20 So. 424.

In Southern Railway Co. v. Posey, 124 Ala. 486, 488, 26 So. 914, the question was whether a railroad crossing was defective by reason of a hole caused by the wearing away of a plank. It was not disputed that it was a serious defect but was at one side and could do no injury to one going directly across in the usually traveled portion. As tending to show an unsafe condition as to one in the exercise of due care it was held to be competent to prove that the same condition had caused other accidents, and one witness was permitted to give his own experience about three weeks before the accident.

In Southern Railway Co. v. Lefan, 195 Ala. 295, 70 So. 249, the matter of similarity of conditions was held not to be one of exactitude, either as to time or circum-

stances, and that the similarity of conditions may be inferred from circumstances.

The foregoing cases are cited in Reed v. Hammel Dry Goods Co., 215 Ala. 494, 111 So. 337.

In the case of City of Birmingham v. McKinnon, 200 Ala. 111, 75 So. 487, this Court held that such evidence was admissible when experiences of the kind were an aid on a disputed issue of whether the location was dangerous, and when evidence of the experience of others aided in the solution of the issue. But when, as there, the stake and wire were eighteen to twenty-four inches above the level of the sidewalk they, ipso facto, constituted a dangerous defect in the sidewalk, and it was immaterial whether others had or not fallen over it, on the theory that its dangerous qualities were so certain as not to be affected by the experiences of others.

 There seems to be unanimity of opinion at all events that when the issue contested in the case relates to the inherent dangerous character of the place, especially when it is not obviously dangerous to a person going over that particular location in the exercise of such care as the law imposes on him, it is competent to prove either that other persons were, or that no one else was, caused to sustain an accident under similar conditions at that location. See 45 Corpus Juris 1246; District of Columbia v. Armes, 107 U.S. 519, 2 S.Ct. 840, 27 L.Ed. 618.

Experiences of others at a location do not aid in analyzing its obviously pronounced qualities. Some situations are so conditioned that their effect on people making use of them do not tend to aid in determining whether they are reasonably safe; and the experiences of such people tend mainly to illustrate the extent of their care in its use. But not so where the danger is not so obvious or pronounced. Its reasonable safety may be then illustrated by the experiences of other people at the location under similar conditions.

 The evidence here justifies the inference that this location was in the same condition at the time when the other accidents occurred, and that they were in the day time. The fact that no one was ever seen or known to fall except this plaintiff, though they stumbled, may tend to show that it was not so dangerous as contended. That so many stumbled on it tends to show

that it was dangerous, at least to some extent.

We doubt if this Court should declare that the locus here in question was so certainly dangerous that incidental proof of its dangerous condition would be irrelevant, as discussed in the McKinnon case, supra. If not so certainly dangerous, we cannot say that any legal evidence which tends to show its dangerous condition is erroneously admitted, however cumulative it may be. We have reached the conclusion that no reversible error is here shown.

 If the evidence is relevant for one purpose, its admission is not error. If there is a thought that it should be limited to some one issue, there should be a request that this be done. The length of time that this condition existed in the sidewalk, its nature, and evidence that it was created in removing a traffic sign were sufficient to justify an inference of notice to the city, and negligence in not causing its removal.

The question of whether evidence that others stumbled but did not fall is material in that connection need not be here and now acted on. In 43 Corpus Juris 1264, section 2028, and the cases noted, there is shown to be a conflict of authority, though the majority seem to hold that evidence of other accidents at the same place is admissible for that purpose if so related to the idea of notoriety as to shed light on the question of notice to the city. The other accidents, according to those authorities, should be of such sort as that notice of their existence may have reached responsible city authorities, if not actually known to them. But we have not made a careful study of the cases, and do not intend now to define the principle for our courts.

During the argument to the jury, counsel for defendant commented on the absence of Dr. Simon, and observed that plaintiff had ample opportunity to bring him here and had not raised a hand to get him to appear. To this objection was made, which the court sustained and defendant excepted.

The evidence shows that when plaintiff was hurt she was on her way to see Dr. Pruitt, whose office was near where she fell. When she fell Dr. Pruitt came, and put her in her car and carried her to Dr. Simon's office near by. He made X-ray pictures of her knee and later of her back, and dressed both knees, after which she was carried home. She was Dr. Pruitt's

52

patient. He continued to treat her, but Dr. Simon had also been her physician. He was not summoned as a witness, and there was some evidence that at the time of the trial he was in Florida. Dr. Pruitt testified to the serious nature of plaintiff's injuries. No X-rays were offered. The contention was that her knee was probably permanently injured, and continued to cause pain at the time of trial, more than a year afterwards. She also complained of her back, and had worn a brace on her back. Dr. Pruitt did not testify about the X-ray pictures. But it was his diagnosis that the capsule that lubricates the knee broke and the fluid came out around the joint, that this sometimes causes a permanent condition of injury.

A few days after the accident, plaintiff made a statement to the city claim attorney in which she named Dr. Simon as one of her physicians. He was interviewed by the defendant.

■ The general rule is when a witness is accessible to both parties, or his evidence would be cumulative, neither party can comment on his absence. Coosa Portland Cement Co. v. Crankfield, 202 Ala. 369, 80 So. 451; Louisville & Nashville R. R. Co. v. Sullivan Timber Co., 126 Ala. 95, 27 So. 760.

■ Dr. Simon's name was given to the city and its representative interviewed him, and neither party had him summoned. He was a competent witness for defendant. 70 Corpus Juris 439; 28 R.C.L. 532. Defendant knew the nature of his probable testimony, and made no effort to get him and did not seek a postponement for that purpose, and offered no showing as to his testimony, and that it would be more than cumulative.

■ The ruling of the court in this connection is well supported, and must be approved.

■ Appellant contends that there was error in refusing the affirmative charge because the sworn statement filed under section 12 of the Act of 1915 (General Acts 1915, page 298) did not sufficiently state the manner in which plaintiff sustained her injuries. The statement recites that she was injured by stepping, stumbling or falling over a defect in a public street, which consisted of a broken piece of iron, at a named location protruding several inches above the sidewalk. Other details were given. The contention is that "step-

ping, stumbling or falling," is not sufficiently precise. We cannot agree with the argument. See City of Birmingham v. Martin, 228 Ala. 318, 153 So. 235; City of Birmingham v. Cox, 230 Ala. 99, 159 So. 818; City of Birmingham v. Carle, 191 Ala. 539, 68 So. 22, L.R.A.1915F, 797.

## Charge G—Assignment No. 7.

This refused charge would prohibit the jury from awarding plaintiff any damage for loss of commissions. Plaintiff had proven loss of time and an approximate amount of commissions she had earned in the immediate past. The complaint alleges that she lost time and was permanently injured.

■ True, such earnings are not a proper measure of damage, but are useful to aid the jury in estimating a fair and just compensation for being prevented by the injury from engaging in her work. Bankers' Mortgage Bond Co. v. Sproull, 220 Ala. 245, 124 So. 907; Strickland v. Davis, 221 Ala. 247(9), 128 So. 233.

■ The court had not charged the jury that the measure of damages included amounts which might have been earned as commissions, or that lost commissions should be considered in measuring the damages. While it is true that any such supposed loss which might have been earned is not a proper measure of damages, the jury should consider past experiences in such a case to estimate the value of earning capacity. We think such a requested charge to the jury would tend to confuse them in this respect. No such claim of damage was made in the complaint nor otherwise as shown by the record. But those facts should not be eliminated altogether.

We do not think there was reversible error in refusing this charge.

## Charge 11—Assignment No. 8.

■ This charge eliminated permanent injury as an element of damage. But the evidence is such that the jury could find that the injury would probably be permanent. The physician testified that it was more likely to be permanent than otherwise. Plaintiff continued to suffer pain to the time of the trial. We cannot say as a matter of law that there was no tendency of the evidence on which its permanency may be based.

Assignment No. 9—Refusal of New Trial.

We do not think there is reversible error in the record relating to this motion or otherwise except in connection with the amount of the award of damages. We think it should be reduced to $2,400. It also appears that she probably misrepresented the amount of her recent earnings, and at the time of trial was earning more than she did before the accident. And in the meantime she has sustained another claim of injury in an accident in the Massey Building. This to her ankle, and for which she sued the day following this judgment.

The judgment will stand affirmed if plaintiff shall within thirty days file a remittitur of all damages in excess of $2,400, otherwise it will be reversed and remanded under section 6150, Code.

Affirmed conditionally.

GARDNER, C. J., BOULDIN, and LIVINGSTON, JJ., concur.