215 So.2d 447

**ALABAMA POWER COMPANY et al.**

**v.**

**Theresa H. SCHOLZ, as Adm'x. etc.**

**I Div. 288.**

Supreme Court of Alabama.

July 18, 1968.

Rehearing Denied Nov. 21, 1968.

234

Martin, Balch, Bingham, Hawthorne & Williams, Birmingham, and Inge, Twitty, Duffy & Prince, Mobile, for appellants.

J. Terry Reynolds, Jr., and Wm. R. Lauten, Mobile, for appellee.

LAWSON, Justice.

This is a suit by Theresa H. Scholz, as administratrix of the estate of her deceased husband, William R. Scholz, against Alabama Power Company, a corporation, and Robert G. Middleton to recover damages on account of the death of her husband, who died following a collision between the automobile he was driving and a truck owned by Alabama Power Company, which was being operated at the time of the collision by Robert Middleton, an employee of Alabama Power Company, who was admittedly acting within the line and scope of his employment at the time of the collision.

The suit was filed under the authority of the wrongful death statute. § 123, Title 7, Code 1940.

The case went to the jury on the complaint, which contained a single count charging negligence, the defendants' pleas of the general issue and pleas of contributory negligence, and on plaintiff's general replications to the contributory negligence pleas, which replications constituted a joinder of issue on those pleas.

There was a jury verdict in favor of the plaintiff against the defendants in the amount of $20,000. Judgment was rendered and entered in accordance with the jury's verdict.

The defendants filed separate motions for a new trial, which were overruled. Thereafter the defendants appealed to this court from the original judgment and from the judgments overruling the motions for new trial.

The defendants below, appellants here, have made separate assignments of error, but the assignments of error made by Middleton are identical in every respect with those made by Alabama Power Company.

The appellants have not filed separate briefs in this court since the argued assignments of error relate to rulings of the trial court which affect the appellants alike.

We will consider the eight assignments of error which are argued in appellants' brief. The assignments of error which are not argued in appellants' brief "will be deemed waived and will not be considered by the court." Supreme Court Rule 9; Cook v. Latimer, 279 Ala. 294, 184 So.2d 807.

The collision occurred on Mobile's Spring Hill Avenue, which runs generally east and west at the point of the collision. The eastbound and westbound lanes of travel are separated by a raised parkway or median strip, which is planted with grass and azaleas. We are not directly concerned in this case with the eastbound lanes, that is, those lanes on the south side of the median strip.

The two lanes for westbound travel, located on the north side of the median strip, are separated by a broken white line approximately four inches in width, which is painted on the asphalt surface. We will sometimes hereinafter refer to the westbound lane situated next to the median strip as the inside lane and to the other westbound lane as the outside lane. The inside lane is approximately ten feet seven inches wide and the outside lane approximately eleven feet five inches wide.

Alabama Power Company at the time of the collision was under contract with the City of Mobile to patrol and inspect the white-way system owned by the City and to replace burned-out light bulbs in the white-way system. This work was usually done at night.

The defendant Robert Middleton and one James Green were employed by the Alabama Power Company to make such inspections. They reported for work at midnight, Friday, February 1, 1963. A few minutes thereafter they left their "crew headquarters" on Michigan Avenue in an Alabama Power Company truck which Middleton drove. After patrolling and inspecting the whiteway system in other sections of the City of Mobile, they proceeded in a westerly direction on Spring Hill Avenue. As they approached the intersection of Spring Hill Avenue and Walshwood Avenue they saw that a light in a white-way standard situated on the north side of Spring Hill Avenue and west of Walshwood Avenue was not burning. At that time Middleton was driving the truck at a speed of from twenty to twenty-five miles an hour in a thirty-five mile per hour zone. After noticing that the light was off, Middleton reduced the speed of the truck, crossed the intersection of Walshwood Avenue and Spring Hill Avenue and drove past the white-way standard in which the bulb was not burning. He stopped the truck in the outside lane at a point west of the white-way standard involved at a distance approximately the length of the truck. Middleton then turned the wheels of the truck to the right and backed the truck toward the white-way standard at an angle. This positioning of the truck was necessary in order that the ladder on the top of the rear portion of the truck could be pulled down and placed in the specially designed tail gate of the truck in such a manner that one of the men in the crew, Middleton or Green, could stand on the ladder and place a bulb in the white-way standard. After positioning the truck in the manner indicated above, Middleton applied the emergency brake and began to open the door on his side of the truck when the collision occurred. It was then about 1:00 A.M. of February 2, 1963.

The left front fender of the truck and a part of its bumper on the left side were hit by the right side of a 1961 Pontiac Tempest automobile being driven by the deceased, William R. Scholz. After hitting the truck, the Scholz automobile proceeded approximately 179 feet past the point of impact with the truck, swerved to the right and struck a power pole with the left front part of the automobile, breaking the power pole at the ground level. The Scholz automobile then spun around, travelled approximately thirty-four feet farther and up into the yard of one J. A. Naylor. It came to rest at right angles to Spring Hill Avenue with the front of

the car on a walkway facing Spring Hill Avenue and the rear of the car in Mr. Naylor's yard.

The trial court's refusal of the affirmative charge with hypothesis requested by the appellants in writing is made the basis of appellants' Assignment of Error No. 4.

█ The rule in this state is that in civil cases the question must go to the jury if the evidence or the reasonable inferences arising therefrom furnish a mere gleam, glimmer, spark, the least particle, the smallest trace, a scintilla, in support of the theory of the complaint. Alabama Great Southern Ry. Co. v. Bishop, 265 Ala. 118, 89 So.2d 738, 64 A.L.R.2d 1190.

█ And we have said that when the affirmative charge is refused and the party who requested the charge appeals, we review the tendencies of the evidence most favorable to the opposite party regardless of any view we may have as to the weight of the evidence; and must allow such reasonable inferences as the jury were free to draw, not inferences which we may think the more probable. Duke v. Gaines, 224 Ala. 519, 140 So. 600; Chesser v. Williams, 268 Ala. 57, 104 So.2d 918. See Alabama Power Co. v. Smith, 273 Ala. 509, 142 So.2d 228; Louis Pizitz Dry Goods Co. v. Harris, 270 Ala. 390, 118 So. 2d 727.

Appellants do not argue in support of their Assignment of Error No. 4 that the evidence was not sufficient to present a question for the jury as to their initial negligence.

It is the position of appellants that they were entitled to the affirmative charge with hypothesis (written requested Charge No. 2) because of the contributory negligence of appellee's intestate. We quote the first and last paragraphs of the argument in appellants' original brief made in support of Assignment of Error No. 4:

"This assignment, under which Propositions of Law I and II are applicable, specifies the error of the trial court in refusing to give the affirmative charge with hypothesis in favor of the appellants. It is the contention of the appellants that certain acts of William Scholz, and, in particular, the violation of an ordinance or statutory rule of the road, constituted negligence as a matter of law and that such negligence proximately contributed to his injuries and death. Therefore, it was error on the part of the trial court to refuse written charge number 2 requested by the appellants.

\* \* \* \* \* \*

"Viewing every item of evidence and the inferences most favorably to the appellee, the unlawful, excessive and dangerous speed of William Scholz in violation of the posted speed limit was negligence per se proximately contributing to his injuries and death, and constituted a complete defense to this action. The trial court erred in refusing to charge the jury that if they believe the evidence, they could not return a verdict in favor of the plaintiff and against the defendants."

Proposition of Law I referred to in the first paragraph quoted above relates to the principle to which we have already alluded to the effect that when the refusal of the affirmative charge with hypothesis is reviewed on appeal, the entire evidence and reasonable inferences therefrom are viewed in the light most favorable to the opposite party. And Proposition of Law II to which reference is made in the first paragraph quoted above reads:

"The violation of an ordinance or statutory rule of the road constitutes negligence per se and if the plaintiff is guilty of such violation which proximately contributes to his injuries, then such conduct constitutes a defense of contributory negligence as a matter of law."

Although the appellants do not argue that the evidence was not sufficient to go to the jury as to the question of their negli-

gence, we deem it advisable to make a brief reference to the tendencies of the evidence as it bears on the negligence of the defendants.

As previously shown, the truck was not parked parallel to the curb line. Certain it is that the truck blocked practically all of the outside lane and there are tendencies of the evidence to the effect that all of the outside lane was blocked by the truck and that the left front wheel of the truck was over the center line into the inside lane. The evidence shows that the truck was equipped with various types of flashing red lights designed for the purpose of giving warning to the traveling public of the presence of the truck when it was stopped and there are tendencies in the evidence to the effect that those warning lights were not turned on by the operator of the truck until after the collision.

But it is well established that a plaintiff in a negligence case cannot recover notwithstanding that he may have proven negligence on the part of the defendant, where plaintiff's own negligence is shown by his or the defendant's proof to have proximately contributed to his damage, provided such contributory negligence is specially pleaded. Pollard v. Rogers, 234 Ala. 92, 173 So. 881; Shumock v. Booker, 41 Ala.App. 451, 134 So.2d 780, and cases cited.

There were only two occurrence witnesses, Middleton and Green. Their testimony is to the effect that Middleton looked to the rear before he put the truck into reverse in order to place the back of the truck near the white-way standard and that he saw no vehicle approaching from the east, the direction from which Scholz was driving his automobile. Consequently they could give no testimony as to the speed of the Scholz automobile prior to the time it hit the truck. But they testified that after it hit the truck and before it hit the electric light pole, the Scholz automobile was traveling at a speed of from fifty to sixty miles an hour. As we have

shown, the collision occurred in a thirty-five miles per hour speed zone. However, the plaintiff, appellee here, introduced expert testimony to the effect that the fifty to sixty mile an hour speed could have resulted from the impact of the automobile with the truck in that at the time the automobile was examined after it had hit the electric pole, the engine was found to have been knocked off its mounts to the right, which in turn could have caused the automobile to attain almost its maximum speed. And there was testimony to the effect that linkage to the carburetor had forced the carburetor control valve all the way open. Although it can be argued that the damage to the motor more likely resulted from the impact of the automobile with the electric pole, we cannot say that the jury would not have been justified in finding that such damage occurred when the automobile hit the truck. Consequently the jury would have been justified in concluding that there was no evidence to show that the Scholz automobile was exceeding the thirty-five mile an hour speed limit at the time it hit the Alabama Power Company truck.

There was testimony to the effect that Scholz had consumed two or three drinks of whisky within a period of approximately three hours prior to the collision, but there was no testimony to the effect that he was intoxicated at the time of the collision and no medical testimony was introduced going to show the amount of alcohol in his system immediately after his death. Consequently we cannot agree with the assertion made by appellants in their reply brief that "it is biologically impossible for that amount of alcohol not to have had some effect upon William Scholz." That statement is without support in the evidence

We do not think the trial court would have been justified in giving the affirmative charge in favor of the defendants on the theory that Scholz was guilty of negligence which proximatey contributed to his injury and subsequent death simply because the evidence tended to show that during

a period of approximately three hours prior to the collision Scholz had consumed three drinks of whisky.

True, there was no evidence to contradict the statement of witnesses that the headlights on the truck were on at the time of the collision, but the evidence shows that the weather was foggy and cloudy and there was no evidence going to show at what point east of the point of collision the headlights of the truck could have been seen by one driving in a westerly direction, as was Scholz.

While the question is a close one, we are of the opinion that the trial court correctly left for the jury's determination the question as to whether plaintiff's intestate was guilty of negligence which proximately contributed to his injury and death.

We hold, therefore, that the trial court did not err in refusing to give defendants' written requested Charge No. 2, which as shown above was the general affirmative charge in their favor.

■ The appellants argue Assignment of Error No. 12, which is to the effect that the trial court erred to a reversal in refusing to give their requested written Charge No. 15, which reads:

"The Court charges the jury that under Section 12 of Title 36 of the Code of Alabama the driver of a vehicle overtaking another vehicle proceeding in the same direction shall pass at a safe distance to the left thereof and shall not again drive to the right side of the highway until safely clear of such overtaken vehicle, and if you are reasonably satisfied from the evidence in this case that there was ample space on the left lane for westbound traffic at the time and place of the collision involved in this case for the vehicle driven by William R. Scholz to pass the truck of Alabama Power Company, and that, notwithstanding this fact, the decedent William R. Scholz wilfully or negligently violated this Section, and that such negligence proximately contributed to his injuries and death, then your verdict must be for the defendants."

We are of the opinion that the trial court did not err in refusing defendants' Charge No. 12. The inclusion of the word "wilfully" makes the charge subject to the criticism that it could have confused the jury. The three special pleas of the defendants set up contributory negligence as a defense to the charge of negligence alleged in the complaint. Under the pleadings there was no issue of wilfulness on the part of the defendants or the plaintiff's intestate. Also we think that the "same rule of law was substantially and fairly given to the jury in the court's general charge." § 273, Title 7, Code 1940. Moreover, we are not aware of any case where this court has held that the provisions of § 12, Title 36, Code 1940, are applicable to a vehicle passing a standing vehicle. See Campbell v. Jackson, 257 Ala. 618, 60 So.2d 252.

■ Assignment of Error No. 32 is based upon the fact that the trial court allowed the plaintiff to admit in evidence plaintiff's Exhibit No. 7, which is referred to in appellants' brief as a "model," but as we view it, it is but an exact duplicate of plaintiff's Exhibit 8 except it is in color and shrubbery is shown in the raised parkway or median strip on the north side of Spring Hill Avenue, all outside of the traveled portion of that avenue. The existence or nonexistence of the shrubbery played no part in the collision with which we are here concerned. We are far from willing to order reversal because the exhibit was colored and depicted the shrubbery. The evidence shows that plaintiff's Exhibit 7 was prepared by a draftsman under the supervision of a civil engineer.

Plaintiff's Exhibit 7 was admitted in evidence during the course of the examination of plaintiff's witness Theodore Henken who, prior to the time said exhibit was admitted in evidence, testified that he went to the scene of the accident shortly

after it occurred during the early hours of Saturday, February 2, and again on Sunday, February 3; Tuesday, February 4; and Wednesday, February 5, 1963. He testified that plaintiff's Exhibit 7 "is the picture, or drawing of the area of the scene of the accident." The witness Henken did not prepare plaintiff's Exhibit 7 or plaintiff's Exhibit 8 from which plaintiff's Exhibit 7 was copied.

However, the witness did testify to the effect that the various distances shown on plaintiff's Exhibit 7 were in accord with the measurements which he made "at the scene of the accident."

After plaintiff's Exhibit 7 was admitted into evidence, the plaintiff called as a witness one Russell Lacy, who testified that he was a graduate civil engineer; that on or about February 5, 1963, he went to the scene of the accident and "took a set of measurements in the field," from which plaintiff's Exhibit 7 was drawn by a draftsman under his supervision. The witness further testified that plaintiff's Exhibit 7 accurately represented and reflected the measurements which he took at the scene of the collision. He further testified that said exhibit was drawn to scale although it was "a rather odd scale." While it seems to us that it would have been better if plaintiff's Exhibit 7 had been introduced in evidence during the course of the examination of the witness Lacy, nevertheless we are of the opinion that when his testimony is considered in connection with that given by the witness Henken, no prejudicial error resulted from the admission into evidence of plaintiff's Exhibit 7 during the course of the examination of the witness Henken.

The appellants insist that plaintiff's Exhibit 7 should not have been admitted in evidence for the reason that two parallel lines appear thereon in the inside lane of Spring Hill Avenue. Appellants argue that these lines were designed to represent skidmarks and that there was no evidence to show that if they were skidmarks that they were made by the Alabama Power Company truck. It is to be noted that at the time plaintiff's Exhibit 7 was admitted in evidence the trial court refused to permit the plaintiff to show by the witness Henken that the so-called skidmarks represented by the aforementioned parallel lines drawn on the inside lane of Spring Hill Avenue represented skidmarks made by a vehicle involved in the collision. However, the evidence does show that marks made by some object were seen in the inside lane a comparatively short distance from the divided white line which separated the outside lane from the inside lane.

We will concede that the manner in which this case was tried has made this particular question difficult to decide, but we are of the opinion that the trial court did not commit reversible error in admitting plaintiff's Exhibit 7. See Chastain v. Brown, 263 Ala. 440, 82 So.2d 904.

Appellants' Assignment of Error No. 50 is to the effect that the trial court erred in overruling their objection to the following question propounded on direct examination by counsel for appellee to her witness, James Grippe:

"Now, Mr. Grippe, I'll ask you as an expert, and not with reference to what happened on that particular occasion, but as an expert, and being familiar with the 4 cylinder engine in a Buick Tempest automobile, what normally happens to the acceleration of an automobile if it is knocked off of its mounts to the right, or clockwise, as is reflected in this picture?"

Appellants' argument is to the effect that their objection to the question here involved should have been sustained because the question related to a Buick automobile, while the automobile driven by Scholz was a Pontiac Tempest automobile. Appellants say: "This difference is very important, in that the transmission in a Pontiac Tempest automobile is located in the rear and constructed in combination with the differential. This is not true in a Buick automobile."

It is obvious from an examination of the entire testimony of the witness Grippe that the inadvertent use of the word "Buick" did not affect his answer to the question. The witness had previously testified that he was body shop manager at the Cadillac-Pontiac place of business and had been such for thirteen years and that he was "familiar with the Tempest automobile, the 4 cylinder Tempest automobile such as was involved in this accident, that resulted in this man's death." We are clear to the conclusion that no possible injury was sustained by appellants due to the slip of the tongue of counsel for appellee in using the word "Buick" rather than "Pontiac" in the question. The mistake in language was self-correcting and even if the witness was conscious of the mistake, he proceeded to give an answer applicable to the Pontiac Tempest.

The picture to which reference was made in the question and which was apparently before the witness as he was being examined was plaintiff's Exhibit 2–A, which had been previously admitted in evidence.

■ Appellants also contend that their objection to the question should have been sustained because the question sought to elicit the opinion of an expert witness solely on the witness' interpretation of a photograph. We do not agree with this contention. See Poggetto v. Owen, 187 Cal.App. 2d 128, 9 Cal.Rptr. 395; Woyak v. Konieske, 237 Minn. 213, 54 N.W.2d 649, 33 A.L. R.2d 1241; Dowling v. L. H. Shadduck, Inc., 91 N.H. 234, 17 A.2d 529; 32 C.J.S. Evidence § 558, p. 550.

■ Appellants further argue that their objection to the question asked the witness Grippe with which we are presently concerned should have been sustained because the picture shown Grippe does not show that the motor was off the mounts, but only that it was off of one mount, that on the left front.

We have examined the picture about which Grippe was being examined, plaintiff's Exhibit 2–A, and frankly we cannot determine whether or not it portrays that the motor was off one or both mounts and we do not think that the testimony of the witness Baker is clear to that effect. In any event, we do not think that error to reverse is made to appear even if plaintiff's Exhibit 2–A shows that the motor was off only one mount rather than both. The uncontradicted testimony in the record is to the effect that the motor had been sheared from both mounts. The case of Southern Ry. Co. v. Simmons, 237 Ala. 246, 186 So. 566, relied upon by appellant is in our opinion not in point.

■ Appellants' Assignment of Error No. 54, which is argued in their brief, reads:

"The trial court erred in permitting appellee to offer in rebuttal the testimony of L. R. Flowers, Sr., as such testimony was a part of appellee's prima facie case, was not in rebuttal to evidence offered by the appellant, and such witness was available at the place of trial during the course of testimony offered by the appellee on her case in chief, over the objections of appellant."

The plaintiff, appellee, had caused a subpoena to be issued to Mr. Flowers, Sr. It was not served. He left Mobile on Sunday, September 20, 1964. The trial began on Wednesday morning, September 23, 1964. Mr. Flowers returned that evening about 6:00 P.M., at which time he was informed by his tenant that an attempt had been made to serve a subpoena upon him during his absence. He was not advised of the purpose of the subpoena and consequently made no effort to contact counsel for plaintiff. Plaintiff rested her case on Thursday, September 24, 1964. On that night counsel for plaintiff first became aware that Mr. Flowers, Sr., had returned to Mobile. They contacted him and asked that he appear in court on the following morning, Friday September 25, 1964. He complied with that request and the action of the trial court in permitting him to testify after the defendants had rested is the basis of the assign-

ment of error presently under consideration.

The trial court did not commit reversible error in permitting Mr. Flowers, Sr., to testify after the defendants had rested in view of the circumstances outlined above, although all of his testimony was not strictly in the nature of rebuttal testimony. In Sieben v. Torrey, 252 Ala. 675, 42 So.2d 621, we said:

"* * * And the acceptance or rejection of evidence not strictly in rebuttal is within the sound discretion of the trial court. Cooper v. Slaughter, 175 Ala. 211(4), 57 So. 477; Horton v. Louisville & N. R. Co., 161 Ala. 107(10), 49 So. 423."

Near the conclusion of the trial court's oral charge the following occurred:

"Now Mr. Twitty [one of the attorneys who represented the defendants in the court below] has requested some charges, a number of which I am going to give to you. *Some of which I have refused, but on the ones that I have refused, many of them are refused simply because I didn't like the way he said them; and I thought maybe I ought to say it a little differently; so although I have refused the charges, I am going to go over them before I close my charge.* Well, I have told you the Court never intended to influence you on the facts. If, after a full and careful consideration of all of the evidence in this case, any individual juror is not reasonably satisfied from the evidence, that either defendant Robert G. Middleton was negligent, or the Power Company was negligent, as charged in the complaint, and that such negligence proximately caused the death of Mr. Scholz, then you cannot find for the plaintiff against the Power Company. This says that if a single juror is not reasonably satisfied, you may not find in favor of the plaintiff against whichever defendant you don't think was guilty of negligence. *Now, the reason I am not giving you Mr. Twitty's charge is that I*

*don't want you to think that that necessarily meant that if one juror wasn't satisfied as to the negligence, that you had to find in favor of the defendant.* Sometimes jurors can't agree, and you all have to agree on a verdict before you can return a verdict. I have more of these statements about if any individual juror is not reasonably satisfied that the plaintiff has met the burden, or that the defendant is guilty of any negligence, you cannot return a verdict in favor of the plaintiff and against the defendant. That's certainly true, but it does not mean that if one man is not satisfied, that your verdict must be for the defendants. The same would be true in the reverse.

*      *      *      *      *      *

"One of our Code sections provides that the driver of an overtaking vehicle, —the driver of the vehicle overtaking another vehicle proceeding in the same direction shall pass a safe distance to the left thereof and shall not again drive to the right of the highway until safely clear of such overtaken vehicle. Failure to do this would be negligence, and if Mr. Scholz was guilty of that negligence and this his act of negligence proximately contributed to his injury and death, that would be contributory negligence, and your verdict would be for the defendants. *The reason I'm not giving you the plea [sic] as written is because it doesn't anticipate that because of some negligent act on the part of the defendants, Mr. Scholz might not have been able to see the truck.*

"THE COURT: Plaintiff will state his exceptions, please.

"MR. LAUTEN: No exceptions.

"THE COURT: Mr. Twitty?

"MR. TWITTY: Your Honor, may I be informed as to what written charges you have given?

"THE COURT: I haven't given any of them. I don't give those until after everybody states their exceptions and then I read the written charges.

"MR. TWITTY: I beg your pardon. *I have no exceptions to the Oral Charge.*" (Emphasis supplied.)

■ The first italicized part of the court's oral charge set out above is the basis of appellants' Assignment of Error No. 55; the second italicized part is the basis of Assignment of Error 56; and the third italicized part is the basis of Assignment of Error 57. Such assignments are so closely related that they might well have been argued in bulk since they are governed by the same legal principles and argument. Bryan v. W. T. Smith Lumber Co., 278 Ala. 538, 179 So.2d 287.

However, the appellants have argued Assignment of Error No. 55 at length and for Assignments of Error 56 and 57 have adopted the argument made in support of Assignment of Error 55. In Accident Indemnity Ins. Co. v. Feely, 279 Ala. 74, 181 So.2d 889, we approved such a practice where the same argument was apposite to unrelated assignments of error. If that practice is permissible when the assignments of error are unrelated, it must be acceptable when the assignments of error, as here, are related.

The argument made by appellants in support of the aforementioned assignments of error is that the statements of the trial court of which complaint is made constitute a clear and direct violation of § 273, Title 7, Code 1940, which in pertinent parts reads:

"Charges moved for by either party must be in writing, and *must* be given or refused in the terms in which they are written; and it is the duty of the judge to write 'given' or 'refused,' as the case may be, on the document, and sign his name thereto; which thereby becomes a part of the record. * * *" (Emphasis supplied.)

■ We have held, in effect, that the quoted provisions of § 273, Title 7, supra, do not prevent a trial judge from making explanation of a requested written charge as long as such remarks do not amount to a modification of the charge. Morris v. Corona Coal Co., 215 Ala. 47, 109 So. 278; Walker v. State, 204 Ala. 474, 85 So. 787.

■ Since the appellants did not except to the statements made by the trial court in his oral charge, which they now contend should work a reversal of the judgment below, we do not feel called upon to say whether those statements constituted a qualification or explanation of certain charges requested by appellants which were refused.

■ To invite a review of claimed error in an oral charge, an exception should be taken pointing out the particular part of the charge of which complaint is made. Turner v. Mobile Infirmary Association, 277 Ala. 15, 166 So.2d 851; Matthews v. Maynard, 274 Ala. 330, 148 So.2d 629, and authorities there cited. As shown above, counsel for appellants at the conclusion of the court's oral charge stated: "I have no exceptions to the Oral Charge."

■ Although we hold there is no merit in Assignments of Error 55, 56, and 57 because no exceptions were taken to the oral charge, we feel constrained to observe that the safer course for trial courts to follow is to give or refuse charges in the terms in which they are written. We think this case points up the wisdom of that practice. Here, we know that in his oral charge the court was concerned about the exact language used in some of the written charges requested by appellants, but he does not clearly state which of the charges caused him concern. It is probable from the language used that he did not approve of the way the so-called "single juror" charges were phrased. See Southern Ry. Co. v. Stallings, 268 Ala. 463, 107 So.2d 873; Greyhound Corp. v. Brown, 269 Ala. 520, 113 So.2d 916.

Since we find no reversible error in any of the argued assignments of error, the judgment of the trial court is affirmed.

Affirmed.

LIVINGSTON, C. J., and MERRILL and HARWOOD, JJ., concur.