215 So.2d 580

**ALABAMA ELECTRIC CO-OPERATIVE, INC., et al.**

v.

**Eddie Lee PARTRIDGE.**

**4 Div. 253.**

Supreme Court of Alabama.

Nov. 14, 1968.

Powell & Sikes, Andalusia, for appellants.

253

Tipler & Fuller, Andalusia, for appellee.

KOHN, Justice.

Plaintiff (appellee) filed an action in the circuit court of Covington County, Alabama, against Alabama Electric Co-Operative, Inc., a corporation, Covington Electric Co-Operative, Inc., a corporation, and James Leroy Williams. There were two counts in the complaint. Count One was

for simple negligence; and count two was a wanton count.

After the court overruled demurrers, defendants (appellants) pled the general issue in short by consent. Plaintiff amended her complaint by eliminating as a party-defendant, Covington Electric Co-Operative, Inc., a corporation, and by adding counts 1A and 2A. Count 1A was for simple negligence and Count 2A was a wanton count.

Defendants' demurrers to the amended complaint were overruled and the defendants pled the general issue. The case was tried before a jury. A jury verdict was rendered for plaintiff and against defendants, Alabama Electric Co-Operative, Inc., a corporation, and James Leroy Williams, for $30,000.

The action in the lower court resulted from a collision on August 30, 1964, between an Alabama Co-Operative truck driven by defendant, James Leroy Williams, and a station wagon driven by plaintifff, Mrs. Eddie Lee Partridge. The evidence was in conflict, and it would appear that plaintiff's vehicle was stopped at the time of the collision. The right front of the truck, driven by defendant, James Leroy Williams, struck the left rear of plaintiff's station wagon, causing the station wagon to roll down an embankment.

As a result of the collision, plaintiff was hospitalized for twenty-one days, and later was readmitted to the hospital for further treatment.

It would serve no useful purpose to go into detail of the injuries of plaintiff, but her testimony tended to show that she was limited in doing her housework, and that she could only stoop about one-third the way a normal person could. It was plaintiff's further contention that, as a result of the accident, one of her feet began to turn in a deformed manner, resulting in a limp. There was admitted at the trial a moving picture film that was secretly taken of the plaintiff, which became a part of the record and an exhibit on this appeal.

Plaintiff received further treatment at a hospital in Pensacola, Florida, where a neurosurgeon performed a myelogram. This neurosurgeon diagnosed a ruptured disc and instructed the plaintiff to discontinue the use of a brace formerly prescribed by another doctor. Plaintiff also claimed that she had some hemorrhaging from her intestinal tract which occurred approximately six weeks following the accident, but it had ceased at the time of the trial. There was also testimony concerning the ability of plaintiff relative to the raising of her legs, and it was diagnosed as being limited to 60%, or two-thirds of normal, and one doctor found that flection in her back was only one-third of normal.

It appears from the record that the myelogram disclosed "a large ruptured mid-line lumbar disc at the L–5 level, slightly more prominent on the right side of the mid-line" with resulting, "sciatic neuritis, from compression of one of the roots of the nerve." From testimony it was disclosed that the plaintiff had emotional problems relative to an operation in that she had "extreme fear" of surgery. There was testimony that plaintiff suffered 10%–15% permanent disability to the body as a whole. There was testimony of an estimate of the number of days of hospitalization that would be required, and the cost of the proposed additional surgery was submitted to by the plaintiff. Such an operation was termed "major surgery." One doctor testified that, as a matter of fact, the plaintiff should have had a second myelogram in his opinion.

At the time of the trial, plaintiff had already become obligated for $1,876.66 in medical expenses (not including the estimated future medical of $1,600.00), and $2,839.30 in lost time from her job at which she earned $55 per week. At the time of the trial plaintiff was thirty-four years of age with a life expectancy of thirty-four additional years.

Sufficient evidence was before the jury that the plaintiff had suffered pain and

anguish as a result of her injury, and that her body was impaired to some degree permanently.

We will discuss the assignments of error by appellants in the order that they are argued in appellants' brief:

*Assignment of Error No. 9.*

■ Assignment of error No. 9 raises the point that the trial court committed error in overruling and denying motion for new trial by appellants on account of the fact that on the hearing of the motion for new trial, the testimony conclusively showed that a blackboard chart, purporting to itemize plaintiff's alleged damages, was exhibited before some of the members of the jury who were trying the case before court was called, and that said chart was displayed before a portion of said jury after the attorneys for the parties had concluded their closing arguments, and after the court had completed its oral charge to the jury.

The evidence was in dispute on the motion for a new trial, as exactly how the chart got back in the main courtroom before court opened and before the jury began its deliberations. It appears from the record that late in the afternoon before the case was submitted to the jury the following morning, and after counsel for the parties had concluded their arguments, the court declared a recess. The jury left the main courtroom and the chart was still visible from the side of the jury box. The court then called the bailiff to remove the chart from the courtroom to the grand jury room, which, of course, is another room separate from the main courtroom where the trial occurred. The bailiff removed the chart as instructed by the court.

It appears that before court was called at 9:00 o'clock the next morning, the chart had been back in the courtroom where some of the jury could have seen it. It is not clear as to how the chart got back in the courtroom after it had been removed previously by the bailiff the afternoon before.

When the judge called court at 9:00 o'clock the next morning, the jury had already retired to commence their deliberations and neither the jury nor the chart were in the courtroom when court was called at 9:00 o'clock A.M. by the trial judge.

The basis of appellant's contention, relative to the chart, is that this temporary view of the chart was at a time when the trial judge was not present. The appellant bases his contention for reversal for this on McLaney v. Turner, 267 Ala. 588, 104 So.2d 315.

We have carefully studied the record and, under the facts of the record, we do not think that McLaney v. Turner, supra, is authority that would warrant this court in concluding that the trial court erred in refusing to grant another trial. We do not think there was error requiring a reversal of this cause because of the incident relative to the chart.

■ It is a principle long approved by this court that the correctness of a jury's verdict is strengthened when the presiding judge refuses to grant a new trial. Water Works and Sanitary Sewer Board of City of Montgomery v. Norman, 282 Ala. 41, 208 So.2d 788; Decker v. Hayes, 282 Ala. 93, 209 So.2d 378.

We have studied other decisions cited by appellants relative to the exhibiting of the chart, but we find nothing therein as a basis that would be inconsistent with our interpretation of McLaney v. Turner, supra.

*Assignment of Error No. 7*

This assignment of error argued in brief, relates to the contention of appellants that counsel for plaintiff injected the question of liability insurance coverage in the case in his closing argument to the jury. The evidence is in conflict as to exactly what appellants' counsel's language was which

provoked the statements of the appellee's (plaintiff's) counsel's remarks. The record discloses that the trial court sustained appellants' objection to the argument complained of and instructed the jury to disregard it.

It would appear from the record that the entire argument of appellants, or the language that plaintiff's (appellee's) counsel contended he was answering "in kind," was not set out in the record. We hold that because the exact language is not set out in the record, that is the exact language that was used by defendants (appellants), and was being answered "in kind" by appellee (plaintiff), the record thereupon being incomplete, this court is not in a position to say that the judgment of the trial court in overruling the motion for a new trial on this point was erroneous, and certainly should not have been the basis for overcoming the presumption in favor of the conclusions of the trial court. Nothing in the record discloses that the trial court's ruling on this aspect of defendants' motion for a new trial was plainly erroneous or manifestly unjust. Cook v. Sweatt, 282 Ala. 177, 209 So.2d 891.

McLaney v. Turner, supra, is authority for counsel to reply "in kind" to statements made by counsel for the opposition, and from the limited record before us, we are unable to say that the trial court committed error in its ruling on this aspect of defendants' motion for a new trial.

Alabama Power Co. v. Smith, 273 Ala. 509, 142 So.2d 228, is authority for sustaining the lower court's ruling relative to the argument of counsel as complained of by appellant. The decisions in Alabama Power Co. v. Smith, supra, Water Works and Sanitary Sewer Board of City of Montgomery v. Norman, supra, and Burnett v. Bledsoe, 276 Ala. 139, 159 So.2d 841, sustain the position taken by the lower court on this question. In such cases, the rule is restated that with respect to remarks of counsel much discretion is allowed the trial court, and the appellate court will not

interfere where this discretion is not abused. We reiterate that no abuse of discretion appears in the instant case on this aspect of the appeal.

*Assignment of Error No. 6*

This assignment on the part of appellants is based on the contention that the court erred in sustaining an objection by plaintiff to certain argument made by defendants' counsel relative to one Dr. Hodnett, who had treated plaintiff, not being in court to testify. Dr. Hodnett lived in Pensacola, Florida, the same place that one Dr. Kimbell lived at the time of the trial. Dr. Kimbell was present in court and did testify.

Appellants recognize the rule that a party cannot comment in argument upon the failure of his opponent to call a particular witness if the witness is equally accessible to both parties. City of Birmingham v. Levens, 241 Ala. 47, 200 So. 888. Appellants attempt to refute this general principle by claiming that the witness was *not* accessible to appellants, and that, under the decision of Carter v. Chambers, 79 Ala. 223, the court should not have sustained the objection to the argument.

It would appear from the record that the means of producing the witness referred to, existed for both the appellants and the appellee, and the record discloses that the appellee actually subpoenaed the witness. We do not think the trial court abused its discretion in sustaining the objection to such argument relative to the absence of the witness. We do not think the case of Carter v. Chambers, supra, applies under the evidence as disclosed by the record in this case.

*Assignment of Error No. 8*

This assignment is based on the contention that the trial court committed error in overruling appellants' motion for a new trial because the verdict was excessive. The principle is so well settled in this state that it would serve no useful purpose by citing an array of cases that a verdict will

not be disturbed unless the verdict is so excessive that it indicates passion, prejudice, corruption, or mistake. Water Works and Sanitary Sewer Board of City of Montgomery v. Norman, supra.

■ Tested by the above principle, we we find nothing in the record warranting a holding that the verdict was excessive.

### Assignments of Error Nos. 4 and 5

■ These assignments contend that the action of the trial court in refusing to allow counsel for appellants (defendants) to ask certain medical questions of the witness, Dr. Tomberlin, was reversible error.

We do not think it pertinent to rule on whether or not the questions asked did or did not assume facts supported by the evidence. We feel that, under the particular facts as disclosed by the record in this case, the sustaining of objection to the questions did not injuriously affect the substantial rights of appellants, and it was error without injury. Rule 45, Revised Rules of the Supreme Court, 279 Ala. XXI, XLI. It has been held that appellants have the burden not only to show error but to show probable injury. Wallace v. Phenix City, 268 Ala. 413, 108 So.2d 173; State v. Hodge, 280 Ala. 422, 194 So.2d 827.

■ The jury had the right to award punitive damages in addition to the compensatory damages. Punitive damages can coexist with compensatory damages. Randolph v. Kessler, 275 Ala. 73, 152 So.2d 138; Alabama Power Co. v. Rembert, 282 Ala 5, 208 So.2d 205.

This court is not unmindful of the decreased value of the dollar at the date of trial.

For the reasons noted, the judgment of the trial court is affirmed.

Affirmed.

LIVINGSTON, C. J., and COLEMAN and HARWOOD, JJ., concur.