224 So.2d 230

Herman Mitchell PAYNE

v.

Charlie JONES, as Father of Valeria F. Jones, Deceased.

5 Div. 860.

Supreme Court of Alabama.

June 5, 1969.

Oakley Melton, Jr., Montgomery, W. B. Reneau, Wetumpka, for appellant.

Howard & Dunn, Wetumpka, for appellee.

BLOODWORTH, Justice.

This is an appeal from the circuit court of Elmore County, Alabama, by the defendant (appellant) from a jury verdict against him in favor of the plaintiff (appellee).

There were three counts in the complaint: Count I for that "the defendant wrongfully caused the death of Valeria F. Jones, the minor child of Charlie Jones, by wrongfully driving a motor vehicle into the said Valeria F. Jones * * *"; count II for that "the defendant negligently ran a motor vehicle into, upon or against the said Valeria F. Jones * * *;" count III for that "the defendant wantonly killed the said Valeria F. Jones by wantonly running a motor vehicle into the said Valeria F. Jones * * *."

The case went to the jury on counts I and II. The affirmative charge with hypothesis was given as to count III. The jury returned a verdict of $12,500.

The accident occurred August 18, 1966 at about 8:30 a. m. in open country on Elmore County Highway No. 8, a paved road twenty feet wide which runs generally east and west about .6 miles east of Wallahatche Creek Bridge. The weather was clear. Defendant was driving his automobile in a westerly direction going forty or forty-five miles an hour when he met and passed another automobile being driven by one Finney 235 feet east of the point of impact. Finney had taken his mother to a beauty shop (owned and operated by the mother of the deceased, Valeria F. Jones) situated on the north side of the highway near the scene of the accident. A private drive leads to the home of the deceased and to the beauty shop which is situated close by. As Finney pulled out into the highway from the private drive and started east, he noticed a vehicle driven by a Mrs. Miller (an aunt of the deceased) parked on the south side of the highway headed east and in a diagonal direction about eighty-five or ninety feet from the beauty shop. Mrs. Miller was talking to two small children standing on the right side of the parked car (the side away from the highway), with the right door open. The left wheels of the Miller car were parked some eight to ten inches on the pavement. The right wheels were on the shoulder.

At the time of the accident, the deceased, Valeria Jones, went to the rear of Mrs.

Miller's car to cross the road and go to her home on the north side to get a baton.

Defendant insists that the child suddenly ran from behind the parked car directly in the path of his automobile so that the front of his automobile hit the child, injuring her. The injuries resulted in her death. Defendant contends that he was faced with a "sudden emergency," while driving his car in a careful and prudent manner and was guilty of no negligence, nor did he wrongfully cause the death of the deceased. Defendant neither testified nor offered any evidence.

Plaintiff insists there is no direct evidence that the child ran across the highway, but rather that she was crossing the highway diagonally when she was struck by the defendant and had actually traveled about thirty-two feet from the Miller car when she was hit. He says there was no sudden emergency." Plaintiff contends that defendant could see for nine hundred feet down the highway, had a clear view of the road and the parked car for at least two hundred and thirty-five feet east of the point of the accident, and that defendant confessed after the accident that he neither saw the parked automobile nor the child until he hit her.

Damages to the defendant's Volkswagen was a dent six to eight inches to the right of the center of the automobile. Plaintiff says the defendant's speed of forty to forty-five miles per hour at a distance two hundred and thirty-five feet east of the accident, his continuing that speed to the point of the accident without slowing up, his failure to see the car and the child, all combined with the physical facts to make it a jury question under the complaint, and that the verdict and judgment should be affirmed.

On this appeal, defendant claims the court below erred in: Overruling his demurrers to counts I and II (assignment of error 1); failing to give a charge on "sudden emergency" (assignment of error

28); failing to give a charge on anticipating or assuming child would suddenly run into the road (assignment of error 3); failing to give a charge on pedestrian suddenly leaving a place of safety (assignment of error 12); allowing a blackboard not introduced in evidence to remain in the courtroom during argument and deliberations (assignments of error 30, 31, 32, 33, 34, 35, 36 and 37); submitting counts I and II to the jury (assignments of error 15, 16, 17, 18, 19 and 20); and failing to grant a new trial (assignments of error 29, 38 and 39).

In his assignment of error 1, the defendant complains that the trial court erred in overruling his demurrers to the complaint and to each count, separately and severally. Specifically, defendant contends that count I merely alleges that defendant "wrongfully caused the death" of decedent "by wrongfully driving a motor vehicle," and that neither negligence nor proximate cause is alleged. Defendant contends count II is fatally defective in not alleging that the death involved a minor child of the plaintiff.

Under our rules of appellate practice, this assignment of error relates to two separate and specific rulings of the court, the overruling of the demurrers to count I and the overruling of demurrers to count II. Therefore, if either one of the trial court's rulings is correct, the defendant (appellant) will fail in his assignment of error because the assignment of error must be altogether good if it is good at all. Turner v. Blanton, 277 Ala. 536, 173 So.2d 80. Thus, we must consider whether the trial court correctly overruled demurrers to either of the two counts.

Defendant contends count II is insufficient because it does not aver that the decedent was a minor child of the plaintiff. Grounds of demurrer which defendant claims point this out are that "the plaintiff was not legally authorized" to file the action, and "does not have the capacity" to bring the action.

■ We are doubtful that these grounds of demurrer are sufficient to point out this omission. But, this we do not have to decide. For, we are of the opinion that count I was sufficient against the demurrers filed. In the first place, the demurrers to count I are too general to be considered, such as, "states no cause of action" and "vague, indefinite and uncertain." W. S. Fowler Rental Equipment Co. v. Skipper, 276 Ala. 593, 165 So.2d 375. Moreover, the case of Drummond v. Drummond, 212 Ala. 242, 102 So. 112, specifically holds the following allegation under the Homicide Act to be sufficient: "[W]rongfully caused the death of * * * plaintiff's intestate, by wrongfully shooting him with a pistol." Such allegations are almost identical to those in count I. Such a count clearly is in trespass charging a direct and immediate wrong, the distinguishing characteristic of the action of trespass. Mobile & Montgomery Railway Co. v. McKellar, 59 Ala. 458; Myers v. Baker, 24 Ala.App. 387, 135 So. 643.

■ Thus, since assignment of error 1 complains of the overruling of demurrers to both count I and count II, if either count is good, the assignment is bad. We conclude that count I was not subject to the grounds of demurrer alleged. Therefore, it is unnecessary for us to consider whether the demurrers should have been sustained to count II.

Under his assignment of error 28, defendant complains of reversible error on the part of the trial court in refusing his requested charge on "sudden emergency."

■ We do not consider the refusal of this charge to be error to reverse because under the facts of this case there is no direct evidence that the deceased suddenly ran from behind a parked car into the defendant's car, as defendant argues, and thereby confronted him with a "sudden emergency" which he was unable to avoid. Although witness Causey did testify that he saw "her run across the highway that morning," this is not direct evidence that at the time of the accident the deceased was running across the highway. Moreover, the trial court did give defendant's requested charge 38 on "immediate emergency" and the defendant had the benefit of this before the jury.

Defendant urges error in the trial court's refusing to give his requested charge (assignment of error 3) that he " * * * was under no duty to assume or anticipate that the Plaintiff's child would suddenly run into the road * * *."

■ We consider this charge to be abstract in that, as we have already mentioned, there is no direct evidence that the child suddenly ran into the road immediately in front of the defendant's automobile. This charge was correctly refused.

In assignment of error 12, defendant complains of the trial court's refusal of his charge 14 that "no pedestrian shall suddenly leave a curb or other place of safety and walk or run into the path of a vehicle which is so close that it is impossible for the driver to yield * * *."

■ Aside from the comments we have already made as to the lack of evidence that the deceased "suddenly" left a place of safety in this case, this charge is substantially covered by given charge 1 for the defendant. We find no error herein.

In his assignments of error 30–37, inclusive, defendant urges reversal because the plaintiff's witness, Mrs. Miller, made a drawing on a blackboard of her version of the accident, which was referred to throughout her testimony and that of Mr. Causey, but was never introduced in evidence.

After both sides had rested but prior to closing argument and oral charge, defendant moved the court to have the blackboard drawing erased or removed from the presence of the jury, which motion was overruled by the court who permitted the drawing to remain in front of the jury throughout the closing argument of counsel and

oral charge of the court. Defendant complains that this was a "continuous distraction." Defendant says also that the blackboard remained in the courtroom, which was used by the jury during its deliberation, after all parties had cleared the courtroom.

Presumably, defendant does not complain about the use of the blackboard as an "aid to its understanding" of the witness' testimony before the jury, which we have held to be permissible. Crocker v. Lee, 261 Ala. 439, 74 So.2d 429. But, defendant complains of the blackboard remaining in the courtroom during closing argument and the charge of the court because he says "it deprived the appellant's attorneys of the jury's undivided attention * * *."

■ We have long held that the use of a blackboard for the purpose of illustrating testimony is within the sound judicial discretion of the trial court. We find no abuse of that discretion here. Crocker v. Lee, supra; Clark v. Hudson, 265 Ala. 630, 93 So.2d 138; Southern Cement Co. v. Patterson, 271 Ala. 128, 122 So.2d 386. In Southern Cement Co. v. Patterson, we specifically sanctioned the use of blackboards and charts in clarification, explanation and use of counsel in drawing inferences or making calculations based upon the evidence. There, we held the trial court properly overruled objections to use of a blackboard during argument to the jury. Thus, we find no error in allowing the blackboard to remain up to the time the jury retired under our decisions.

As to defendant's complaint that the court erred in allowing the jury to use the courtroom where the trial was held for its deliberations while the blackboard remained therein, no objection was made by counsel for the defendant until after the jury verdict was in. Immediately after the verdict, counsel for defendant had pictures made showing the blackboard in plain view.

If defendant had any objection to the blackboard remaining in the courtroom during the jury's deliberations, it would seem he would have made his objection known to the trial court before the jury retired instead of waiting until the jury returned its adverse verdict.

■ However, we find no error herein. The record shows that the drawing on the blackboard was repeatedly used by both sides in examination of witnesses, and although not actually offered in evidence, to all intents and purposes it appears to have been treated as having been introduced. Thus, "* * * the nature and character of its frequent use compelled its introduction." Arrick v. Fanning, 35 Ala.App. 409, 412, 47 So.2d 708; Taylor v. State, 249 Ala. 130, 30 So.2d 256; Davis v. State, 35 Ala. App. 144, 44 So.2d 275.

Assignments of error 15–20, inclusive, complain of the trial court's failure to give the general affirmative charge as to counts I and II and in submitting these two counts to the jury. Defendant says the plaintiff did not prove he was the father of the deceased and the evidence was insufficient to support either count I or count II.

■ We are of the opinion that the proof was sufficient to go to the jury as to whether the plaintiff was the father of the deceased.

We now consider the sufficiency of the evidence to submit counts I and II to the jury. Count I is in trespass. Myers v. Baker, supra. Count II is in case, negligence. We consider the evidence sufficient to take the case to the jury on count II, negligence.

We have said that where the affirmative charge is refused we will review the tendencies of the evidence most favorable to the plaintiff regardless of what view we may take as to the weight of the evidence, and will allow such reasonable inferences as the jury was free to draw from the evidence.

■ It is not necessary that we relate the evidence in detail, but we think it

sufficient under our rule that the case must go to the jury if the evidence, or any reasonable inferences arising therefrom, furnish "a mere gleam, glimmer, spark, the least particle, the smallest trace, a scintilla, in support of the theory of the complaint." Alabama Power Co. v. Scholz, 283 Ala. 232, 215 So.2d 447.

In the light of these rules, we are of the opinion that the trial court correctly refused to give the general affirmative charge as to count II. Southern Apartments, Inc. v. Emmett, 269 Ala. 584, 114 So.2d 453; Alabama Electric Co-operative v. Partridge, 283 Ala. 251, 215 So.2d 580.

The question remains, is there evidence tending to prove a trespass to the deceased—"an intentional or a grossly negligent act on the part of defendant accompanied by force * * *." Myers v. Baker, supra. We have said that trespass carries " ' " * * * the necessary element of an intentional (or wanton, its equivalent in law), direct application of force by the defendant * * *. Unless there is such direct force there can be no trespass in any aspect." ' " Louisville & Nashville Railroad Company v. Johns, 267 Ala. 261, 277, 101 So.2d 265, 74 A.L.R.2d 499.

Unlike the situation in Myers v. Baker, supra, where defendant turned suddenly and directly to the left without warning into the plaintiff's car and it was held the question of trespass was a jury question, here at most the evidence would reflect that the defendant was guilty of simple negligence. There is no evidence of trespass, an intentional or wanton act on the part of the defendant.

Therefore, we conclude the trial court erroneously refused the affirmative charge as to count I, and allowed the case to go to the jury on this count. This constituted reversible error. Dickey v. Russell, 268 Ala. 267, 105 So.2d 649; Louisville & Nashville Railroad Company v. Johns, supra; Jordan v. Henderson, 258 Ala. 419, 63 So.2d 379.

In the event of another trial, we think we ought to point out that good pleading demands that count II contain the allegations that deceased was a minor. Title 7, § 119, Code of Alabama 1940.

In his assignments of error 29, 38 and 39, defendant complains of error on the part of the trial court in overruling his motion for a new trial, on account of the verdict being against the weight of the evidence and being contrary to the great weight of the evidence. What we have heretofore said disposes of these assignments.

Therefore, in view of the reversible error in refusing the affirmative charge as to count I, this case must be reversed and remanded.

Reversed and remanded.

All the Justices concur.