This is a wrongful death action.
It is undisputed that the late Joe Young shot and killed his wife, the late Jewel Bryan Young, and then committed suicide.
Their bodies were discovered by Raymond Victor Bryan, the Administrator of the Estate of his mother, Jewel Bryan Young and, in that capacity, the plaintiff in this action against Norman B. Young, Executor of the Last Will and Testament of Joe Young, deceased.
There were no eye-witnesses to the incident. However, a suicide note was discovered in Joe Young's real estate office, located immediately behind the Young's home:
"Double Branch
"January 18th, 1978
 "I have apparently lost the love of my wife, Jewel, and we have made some agreements for divorce. She is such a fine person and I love her so deeply that the heartbreak is more than I can endure. Please forgive me Lord.
 "Deliver the papers in the brown sacks to my lawyer Ben Kilborn. They are in regard to property investments and he will know how to handle them.
 "The names of my two sons is on the attached sheet. Give me a plain burial with private attendance of family only.
"/s/ Joe Young"
Bryan filed suit seeking $500,000 damages for the wrongful death of his mother, alleging that Joe Young wrongfully took her life by shooting her. Norman B. Young, as executor, answered with a general denial and a special plea of insanity. A jury trial resulted in a verdict in favor of Bryan for $500,000. Young appeals from the judgment entered on that verdict.
A number of issues are presented by Young on appeal; dispositive are the issues whether the trial court erred by allowing Bryan to inject evidence and argument regarding Young's wealth into the case and whether it erred by allowing argument which misled the jury to award compensatory rather than punitive damages. Young contends the cumulative effect of such evidence allowed by the trial court was prejudicial. Specific evidentiary errors he notes are as follows:
 I.
Raymond V. Bryan, decedent's son, was allowed, over objection, to draw a diagram showing defendant's house on a hill with a lake and the legend "Double Branch Estates."
 II
The trial court allowed the testimony of Raymond V. Bryan about the contents of a brown paper bag Bryan found beside *Page 236 
Young's suicide note. The bag contained deeds and insurance policies.
 III.
Counsel for Bryan, over objection, was allowed to ask defendant's expert witness:
 "Q. And were you aware of the fact that there was a large brown grocery bag there that had all of the deeds put together in one section, and all of the mortgages put together in one section and all the promissory notes . . . (inaudible, both Mr. Hess and Mr. Kilborn start talking at once.) . . . and the business papers were put together in an orderly neat manner?
 "MR. KILBORN: Objection, Judge, he's been talking about things of value of which there is no evidence at all.
"THE COURT: Overruled.
"MR. KILBORN: Except. Move for a mistrial.
"THE COURT: Motion denied."
 IV.
During final argument, counsel for Bryan was allowed, over objection, to argue:
 "MR. HESS: Did he have the right to do it? We cannot try him. He has removed himself effectively from the justice of our criminal courts. We are trying the only thing the law leaves to us to try which is his estate. His estate that he so carefully organized the insurance papers about. His estate that he had all the deeds put together in one section.
 "MR. KILBORN: Again, your Honor, I make the same objection. That's improper evidence and I move for a mistrial. He's referring to the wealth or lack of of the Defendant.
 "MR. HESS: This is referring to his mental abilities at the time, his planning.
"THE COURT: Objection overruled, motion denied.
"MR. KILBORN: We except."
Also during final argument, counsel for Bryan was allowed, over objection, to argue:
 "MR. HESS: What about the living victims that he left? The children and family of his wife. He killed his wife. He deprived them of the company of their mother. Now these were not children that lived afar. These were not children that visited occasionally. These were not children that had moved hundreds of miles away.
"MR. KILBORN: Your Honor, I object. . . .
 "MR. HESS: And in one case, this young man here. . . ."
 "MR. KILBORN: Wait, wait, Mr. Hess. I object to the argument as being improper, Your Honor, insofar as he's told 'em he deprived them of their mother and what-not, and the companionship as being improper. It's an improper element of damages and I move. . . .
 "MR. HESS: I'm not arguing damages now, I'm arguing liability.
"THE COURT: I don't recall any evidence of that.
 "MR. HESS: This young man visited with his mother on almost a daily basis. Worked a short distance away. Uh. . . .
"THE COURT: All right. Objection overruled.
 "MR. KILBORN: Exception. Do we have it on the record, Ms. Reporter?
"COURT REPORTER: Yes, sir.
 "MR. KILBORN: We except. And again move for a mistrial.
"THE COURT: Motion denied.
"MR. KILBORN: Except."
We will discuss these alleged errors by the trial court in the order above presented.
 I.
In response to Young's objection to the admission of a diagram showing Young's house, driveway and his real estate office, counsel for Bryan stated:
 "It's not my intention to dwell on the size of it or anything. I want to establish the house, just the layout of how he got in the house, where he found the body and where the office was in relation to the house." *Page 237 
It is a well-established rule of evidence in Alabama that a diagram or drawing may be used by a witness to clarify his testimony. See James v. Mizell, 289 Ala. 84, 90, 265 So.2d 866,871 (1972); Crocker v. Lee, 261 Ala. 439, 445-46, 74 So.2d 429,435 (1954); Southern Cement Co. v. Patterson, 271 Ala. 128,135, 122 So.2d 386, 391 (1960). Further, "[t]he use of a blackboard for the purpose of illustrating testimony is within the sound judicial discretion of the trial court." Payne v.Jones, 284 Ala. 196, 201, 224 So.2d 230, 234 (1969).
We cannot fault the trial court for allowing Bryan to use the diagram to explain his testimony.
 II.
Issues two and three deal with evidence introduced regarding the contents of the brown paper bag found beside the desk upon which the suicide note lay.
As to both of these issues Young argues that evidence that the documents in the bag were in order and seemed to be grouped together, coupled with evidence that the office and home were not in any disarray, is relevant to Young's mental state. He argues this is probative regarding Young's rational thought and behavior just prior to the homicide-suicide incident.
It is well-settled in Alabama that where there is an issue of mental capacity, a wide range of evidence is allowable. See:Watts v. State, 282 Ala. 245, 210 So.2d 805 (1968); and Barbourv. State, 262 Ala. 297, 78 So.2d 328 (1954).
Therefore, we hold the above evidence was admissible as probative of Joe Young's mental competence.
 III.
Appellant argues that evidence of the wealth of Joe Young's estate was again brought up in plaintiff's closing argument when it was stated: "We are trying the only thing the law leaves to us to try which is his estate. His estate that he so carefully organized the insurance papers about. His estate that he had all the deeds put together in one section." The contention is that prejudice to defendant was compounded when plaintiff was allowed to argue: "What about the living victims that he left?"
Appellant Norman Young contends these arguments were advanced for the sole purpose of prejudicing the estate of Joe Young by improperly introducing its wealth to the jury, and thereby encouraging the jury to award damages based upon elements not proper to be considered in the fixing of the amount of punitive damages.
We think it clear that both statements by counsel for Bryan during final arguments were improper. Recently, this court, inHorton v. Continental Volkswagen, Inc., 382 So.2d 551 (Ala. 1980), reversed the trial court for error occurring when the following statement was made by defense counsel during statement:
 "`Now, we expect the evidence to show, ladies and gentlemen of the jury, that Continental Volkswagen, a small private domestic corporation owned by Mr. William R. Alford —'"
382 So.2d at 552.
This court opined that statement was an improper injection into the case of defendant's modest financial status:
 "The trial court was incorrect in overruling these objections because the remarks necessarily contain the aspects of wealth (and therefore a net worth.) . . . Because this statement was prejudicial and not eradicated, the cause must be, and is, reversed and remanded."
382 So.2d at 552.
Remarks made by counsel for plaintiff in this case were much more prejudicial than that made in Horton. Here, counsel's statement during final argument as to defendant's estate had the effect of bringing in as evidence details regarding assets of the estate which had previously been admitted for other, permissible reasons, in a totally different context. Suddenly, evidence that defendant's estate held a number of deeds and insurance policies became relevant to the jury for a purpose other *Page 238 
than determining the mental state of Joe Young when he killed Jewel Bryan Young.
As to plaintiff's argument regarding the losses suffered by Jewel Young's family as a result of her death, it is axiomatic that the only damages recoverable under Alabama's Wrongful Death Statute, § 6-5-410, Code 1975, are punitive in nature.See Estes Health Care Centers, Inc. v. Bannerman, 411 So.2d 109
(Ala. 1982); Board of Trustees of University of Ala. v.Harrell, 43 Ala. App. 258, 188 So.2d 555 (1965); and Hardin v.Sellers, 270 Ala. 156, 117 So.2d 383 (1960).
We note, regarding both improper arguments in the instant case, that the trial court overruled an objection by counsel for Young and gave the jury no curative instructions. When an improper argument is made and the trial judge overrules an objection and fails to instruct the jury as to that impropriety or direct that the argument is to be disregarded, "the test upon appeal is not that the argument did unlawfully influence the jury, but whether it might have done so." Williams v. Cityof Anniston, 257 Ala. 191, 193, 58 So.2d 115, 117 (1952). See also Estis Trucking Co. v. Hammond, 387 So.2d 768 (Ala. 1980), and Alabama Farm Bureau Mutual Casualty Insurance Co. v.Humphrey, 54 Ala. App. 343, 308 So.2d 255 (1975).
Bryan contends that, because of the trial court's subsequent instructions to the jury, Norman Young could not have been prejudiced. He, Bryan, contends the trial court's final oral instructions to the jury, prior to and after it had begun its deliberations, cured any error. A portion of the trial court's oral charge to the jury was as follows:
 "Now if the Plaintiff is entitled to recover, the damages in this case are a little bit different from the damages in an ordinary case. In a suit of this type where the damages are for wrongful death, the damages which you should award if your verdict be for the Plaintiff are punitive damages and not compensatory. Damages in this type of action are imposed entirely for the preservation of human life and as a deterrent to others to prevent similar wrongs in the future. The amount of damages should be directly related to the wrongdoing on the part of the deceased, Joe Young. In assessing damages you should not consider the monetary value of the life of the deceased, Jewel Young, for damages in this type of action are, as I said, not compensatory. They're entirely punitive. And they're not intended to compensate the Plaintiff for any financial or pecuniary loss on account of the death of Jewel Young.
 "Your verdict should not be based upon sympathy, prejudice, passion or bias, but should be directly related to culpability of Joe Young and the degree or the character and the degree of the wrong as shown by the evidence in the case and the necessity of preventing similar wrongs in the future."
Following this charge, and following a question asked by a juror, the trial judge stated:
 "You must concern yourself, if the verdict should be for the Plaintiff, with the culpability of the Defendant and the necessity of preventing similar wrongs in the future."
The above instructions to the jury in no wise refer to the impropriety of prior statements by counsel for the plaintiff regarding the estate of the defendant or the losses suffered by the family of Jewel Bryan Young as a result of her death. The trial court should have, at the time the remarks were made,promptly noted to the jury that counsel had departed from legitimate argument. We do not think the oral charge regarding the nature of punitive damages eradicated from the minds of the jurors the improper and highly prejudicial statements made during final argument. In any event, we cannot say the argument did not influence the jury, and if it could have, we are duty bound to reverse.
After careful review of the entire record, we conclude the judgment below must be *Page 239 
reversed and the cause remanded for a new trial.
REVERSED AND REMANDED.
TORBERT, C.J., and FAULKNER, ALMON and ADAMS, JJ., concur.